THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GARY DEAN BOOKER, Defendant-Appellant.

Fourth District   No. 4—91—0138

Opinion filed January 24, 1992.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

John Robinson, State's Attorney, of Sullivan (Kenneth R. Boyle, Robert J. Biderman, and Beth McGann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a jury trial in Moultrie County circuit court, defendant, Gary Dean Booker, was convicted of two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)) and

was sentenced to 12 years' imprisonment. Defendant appeals, arguing (1) he was not proved guilty beyond a reasonable doubt; (2) the court erred by allowing evidence of out-of-court statements made by the victim; (3) the court erred by not instructing the jury about what to consider in determining the weight and credibility of the victim's hearsay statements; and (4) the trial judge should have recused himself. We disagree and affirm.

On March 30, 1990, defendant was charged with two counts of aggravated criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1).) The State alleged between January 1, 1985, and December 31, 1985, and between January 1, 1986, and September 1, 1986, defendant, who was over seventeen years old, committed an act of sexual penetration on his stepchild, who was under 13 years old. The acts allegedly occurred each Tuesday night while the victim's mother bowled and the victim remained within defendant's control.

On July 26, 1990, the State filed various motions *in limine*. After a November 21, 1990, hearing, among other rulings, the court ruled the State could introduce the victim's out-of-court statements in which she complained of the alleged acts. It found an exception to the hearsay rule where the statements made by the victim were reliable based on the circumstances surrounding the making of the statements. It also ruled an expert could testify about posttraumatic-stress disorder, why sexual abuse victims often delay reporting the offenses, and characteristics common in families in which child sexual assault occurs.

Defendant's jury trial began November 27, 1990. The victim testified her mother was previously married to defendant. The victim was 17 years old when the trial began. The charges involved conduct by defendant that occurred *before* the victim became 13 years old on September 1, 1986. After her mother married defendant, the three of them lived in defendant's grandmother's house. In 1984, they moved into the home in which the assaults occurred. The victim stated she and defendant did not get along well and they fought because defendant consumed a lot of alcohol. She never sought help or advice from defendant, nor did she introduce her friends to defendant. She seldom brought friends to her home. In addition, she stated defendant showed no interest in her accomplishments and did not attend her school activities. The victim reported she had a close relationship with her natural father. Although early on defendant wanted to adopt her, she did not want this to occur, and her natural father would not permit it.

The victim testified she knew the nature of sexual intercourse and she had been raped by defendant on a weekly basis between 1985 and

1986. These assaults began when she was 12 or 13 and continued until she was 14 or 15 years old, and transpired while her mother bowled on Tuesday evenings and the victim was left under defendant's control in their home. According to the victim, defendant would enter her bedroom while she was in bed, and have intercourse with her. She testified at times she had pretended to be asleep. Defendant had always been drinking before the assaults occurred. The victim kept a diary during these years, but did not write about the assaults.

She testified she was afraid to tell her mother and ashamed to tell her friends about the assaults because she thought she "was the only person that this had ever happened to and people wouldn't understand." When she did divulge the assaults to counselors and investigators three or four years after the assaults occurred, she still did not want the police involved or her mother told. She also testified she blocked out the incidents until after an event occurred at school, about which her basketball coach spoke to the team. A fan had inappropriately touched one of the team members. This event, according to the victim, ignited her recollection of defendant's weekly assaults.

Corroborative witnesses supported the victim's testimony. The victim complained to these witnesses about the alleged acts. The witnesses included her high school basketball coach, a high school counselor, a mental health center counselor, an Illinois Department of Children and Family Services (DCFS) investigator, an Illinois State Police detective, and the victim's mother.

The victim first divulged the assaults to her high school basketball coach in March or April 1989. The coach testified the coaching staff and team members had discussed the incident where one of the girls was inappropriately touched by a team fan. The girls were told they did not have to allow this conduct. Days after the discussion, the victim spoke with the coach about defendant's assaults. The coach testified she seemed very upset and was very concerned about her mother being told. He reported the victim's allegations to the school principal.

The victim also disclosed the assaults to her high school counselor in October or November 1989. The counselor testified the victim seemed "subdued," "embarrassed," while telling him about the sexual assaults. He referred her to a therapist at the Moultrie County Counselling Center. The therapist, Colleen Gosselin, had a bachelor's degree in education, a master's degree in psychology, an advanced degree in Gestalt therapy, and had participated in numerous workshops. She testified her first meeting with the victim occurred at the victim's school on January 11, 1990. When they discussed the sexual assaults, the victim "seemed nervous *** and a little pale and tearful." When

they met again at the counselling center on January 22, 1990, the therapist observed the victim was again pale and tearful, with her eyes focused on the floor. She also indicated the victim "was seeing relief that she finally got to tell someone her story." At a third session, the victim provided more details about the assaults.

Gosselin explained to the victim they could only meet five times before the victim's parents had to be notified. At the third meeting on January 29, 1990, Gosselin told the victim her mother should be told about the abuse. The victim at no time wanted the police involved, and was hesitant about telling her mother about the assaults.

At the fourth meeting on February 1, 1990, Gosselin initially met with the victim's mother and informed her about her daughter's alleged assaults. The victim and her mother then met with Gosselin and the mother's counsellor, Barb Estes. On February 26, 1990, DCFS was informed about the allegations.

Maria Miller, an investigator for DCFS, testified she and Sergeant Colin McLain, an Illinois State Police detective, pursued further investigation of the victim's allegations. The victim repeated similar allegations during her February 27, 1990, interview with Investigator Miller and Detective McLain. Miller and McLain also interviewed the victim's mother and defendant.

During the interview, defendant stated it was not uncommon for him to consume four or five beers at his place of employment after he got off work, a couple more on his way home, and a couple more when he got home. Defendant indicated the alcohol did not intoxicate him. According to Investigator Miller, defendant initially stated he was aware of what was going on around him when he drank. However, he later stated he had lied, and there were times he did not remember what was happening. Defendant called these occurrences blackouts. Investigator Miller also testified defendant conceded his drinking contributed to the cause of his divorce from the victim's mother.

While speaking to Investigator Miller and Detective McLain, defendant agreed the victim was left in his control each Tuesday while her mother was bowling. However, he initially denied he had any sexual contact with the victim and stated he never entered the victim's bedroom on nights the victim's mother bowled. According to Investigator Miller, defendant later stated if he had sexually abused the victim, it was because he had blacked out. Defendant also initially stated he did not know whether the victim had a diary, and later admitted he read the victim's diary.

Detective McLain also testified to the interviews with the victim and defendant. Detective McLain's testimony paralleled testimony given by Investigator Miller regarding inconsistent statements made by defendant, and consistent statements made by the victim about the assaults.

Defendant's ex-wife, the victim's mother, testified she married defendant in May 1982, when the victim was nine years old. She bowled each Tuesday night from early September until early April. She left home anywhere from 6 p.m. to 6:15 p.m. and would return anywhere from 9:15 p.m. to 10 p.m. Her daughter remained home alone with defendant during this time.

She noted a difference in the relationship between her daughter and defendant once her daughter turned 12. Her mother noted her daughter did "not want to be with [defendant] or around him especially when he was drinking."

She also testified, during 1985 and through the first nine months of 1986 when the alleged assaults occurred, her relationship with defendant was "more hectic due to his drinking." She stated his drinking created a lot of arguments. Because of this, they would at times sleep in separate rooms. They separated in August 1988, and divorced in October or November 1988. She and defendant dated after their divorce and discussed getting back together. Her daughter, she stated, knew she and defendant considered getting back together. The discussions about reuniting ended by January 1990, and may have ceased before this date.

The mother also stated that while they were married, defendant was not very active in parenting decisions related to the victim. She testified that during 1985 and the first nine months of 1986, the victim seemed angered often and to be having problems at school. The mother stated she had read the victim's diary in the past. She also described the relationship between herself and her daughter as "partners" who had gone through a lot together. When problems occurred due to defendant's drinking or other family problems, the victim's mother testified the family did not typically discuss the problems. They "just waited til it blew over."

She first learned defendant had assaulted her daughter when, in February 1990, Gosselin, therapist for the Moultrie Counselling Center, met with the victim, herself, and her counselor from the center, Barb Estes. She testified her daughter seemed upset and scared when she divulged the accusations.

Dr. Ronald Matthew, a clinical psychologist, and executive director of the Moultrie County Counselling Center, provided expert testi-

mony about posttraumatic-stress syndrome, delay in reporting sexual abuse, and characteristics of families in which sexual abuse occurs. Dr. Matthew concluded the victim's actions in this case were illustrative of the above phenomena. He explained most sex abuse victims do not report the assaults until years after the assaults occur, stating:

"One of the most common reported reasons for that is the individual first of all feels that they are not going to be believed and that they will be blamed and accused and be told that it's their fault. We also see in these situations that there is most typically some kind of family disorganizational process going on. A lot of times significant marital conflict. The parents themselves are poor communicators[,] particularly about their problems within the marriage ***."

Dr. Matthew also concluded the victim suffered from posttraumatic-stress syndrome. He characterized four distinct phases of posttraumatic stress and identified how the victim's behavior fit these stages. The first stage is an event which threatens the person's well-being. A sexual assault meets this criterion. The second criterion is that the person reexperiences this troubling event by intruding memories, dreams or nightmares. The victim testified she began having bad dreams. Third, the victim tries to avoid reexperiencing the traumatic event. Dr. Matthew also pointed to evidence the victim had tried to avoid being home alone on Tuesday evenings with defendant. The fourth criterion consists of mood swings, irritability, and difficulty in concentrating. The victim's mother testified—and Dr. Matthew pointed to the significance of this—the victim seemed upset at times when defendant was present. His interview with the victim's mother also indicated the victim experienced periods of reacting in an unusually intense manner to events. This reaction is symptomatic of the fourth criterion of posttraumatic stress.

Dr. Matthew outlined typical characteristics found in families where sexual abuse occurred and which were also present in the victim's family. One of the primary characteristics is numerous opportunities for the perpetrator and victim to be alone together. Marital problems between the parents, sexual difficulties between the parents, and alcohol abuse are also typical. In addition, due to self-esteem problems of mothers of victims of sexual abuse, often the mother's relationship with the child is more akin to a peer relationship rather than to a parent-child relationship.

The victim's mother testified about marital conflicts during her marriage to defendant. The problems were primarily due to defendant's alcohol abuse. The victim and mother sought counselling through

an alcohol-abuse support group. Despite strong encouragement by the victim and her mother, defendant never sought therapy for alcohol abuse. In addition, the victim's mother characterized her relationship with the child as that of "partners." Dr. Matthew concluded the characteristics of the victim's family were similar to those found in families where sexual abuse has occurred.

During defendant's testimony, he denied engaging in sexual activity or having sexual intercourse with the victim. He also denied telling Investigator Miller and Sergeant McLain he may have sexually assaulted the victim and not remembered because he was in a blacked-out condition. He conceded on occasions he consumed five or six beers each night between leaving work and retiring for the day. He also agreed marital problems existed between himself and the victim's mother during their marriage, and that they had consistently argued toward the end of their marriage.

The jury found defendant guilty of two counts of aggravated criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1).) On December 11, 1990, defendant filed a motion for a directed verdict, or in the alternative, a new trial. In his motion, defendant argued there was insufficient evidence to find him guilty beyond a reasonable doubt. He also argued the court erred in not granting his motion for mistrial during the trial. In addition, defendant argued the court should have excluded testimony by witnesses who named defendant as the alleged perpetrator, and Dr. Matthew's testimony about posttraumatic stress because this testimony was cumulative. Finally, defendant argued an instruction on a lesser offense should have been permitted, and he had been denied due process of law. On January 11, 1991, the court heard arguments on defendant's post-trial motion. The court denied defendant's motion and thereafter sentenced defendant to 12 years' imprisonment. This appeal followed.

On appeal, defendant first argues he was not proved guilty beyond a reasonable doubt. He reasons the victim's delay in reporting the assaults, her explanation that she blocked the incidents out, and the presence of a motive for the victim to make the allegations render the victim's testimony suspect. According to defendant, the victim's motive for raising these accusations was to keep her mother from reuniting with him. He also notes there was no physical evidence introduced to show the victim was sexually assaulted. He characterizes the victim's testimony as "not worthy of belief" nor "positive and credible," and her stated reason for not reporting the assaults for four to five years is because she had "blocked out" the incidents as "incredible." His testimony, he argues, was "worthy of belief" because he

professed to having maintained his innocence when questioned by police. He also admitted drinking problems, but never that he had sexually assaulted the victim.

The State argues the evidence presented easily meets the threshold for this court to find the jury could have concluded defendant was proved guilty beyond a reasonable doubt of the two aggravated criminal sexual assaults. It notes Dr. Matthew's testimony explains why a victim delays reporting an assault until long after the incident occurred. It also notes the victim's mother's testimony supported Dr. Matthew's opinion that the victim suffered from posttraumatic stress and the family had problems typical of families where sexual abuse has occurred. In addition, although defendant testified otherwise, Investigator Miller and Sergeant McLain testified defendant stated to them if he had sexually abused the victim he did so because he blacked out from drinking.

The parties agree the standard of review is whether, looking to the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Nitz* (1991), 143 Ill. 2d 82, 95-96, 572 N.E.2d 895, 901; *People v. James* (1990), 200 Ill. App. 3d 380, 395, 558 N.E.2d 732, 742; *People v. Evans* (1990), 199 Ill. App. 3d 330, 336, 556 N.E.2d 904, 907.

■ In criminal sexual assault cases, the victim is typically the only witness (other than the perpetrator) to the crimes. The victim's testimony in this case was consistent with earlier reports she made about the assaults. Defendant's characterization of the victim's accusations as beyond credulity is misplaced. "Any shortcomings in a victim's testimony do not destroy credibility but merely affect the weight to be afforded to the testimony by the trier of fact." It is the jury's function to determine the witnesses' credibility. *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 880, 572 N.E.2d 1219, 1223-24.

Defendant argues the fact that there was no physical evidence to corroborate the victim's claim of sexual assault raises a reasonable doubt as to his guilt. However, the Illinois Supreme Court has long held the testimony of even one witness, which is contrary to defendant's testimony, is sufficient to convict. (*People v. Novotny* (1968), 41 Ill. 2d 401, 411, 244 N.E.2d 182, 188.) A fact finder's determinations on witness credibility and its resolution of disputed questions of fact are entitled to deference on review. *McCarthy*, 213 Ill. App. 3d at 880, 572 N.E.2d at 1223; *People v. Jones* (1988), 174 Ill. App. 3d 737, 745, 528 N.E.2d 1363, 1369.

Dr. Matthew explained sexual assault victims typically delay reporting because they feel guilty and fear others will not believe them. The victim in this case testified she feared people would not believe her and she thought she was the only one this happened to. Her basketball coach, her high school counselor, the therapist at the counselling center, and her mother each described the victim's behavior while divulging the assaults as subdued, embarrassed, nervous, upset, or tearful. This testimony could have convinced the jury the victim suffered from traditional problems sexual assault victims have in reporting the acts.

In addition, witnesses who testified on her behalf each testified to behaviors by the victim which were typical of victims of criminal sexual assault. Dr. Matthew outlined the stages of posttraumatic stress and concluded the victim suffered from it. The victim's behaviors showed similar symptoms, suggesting she suffered a traumatic experience of sexual assault. Dr. Matthew also concluded the victim's family had had problems similar to those frequently found in families where sexual assault has occurred. The victim's mother's testimony about defendant's alcohol problem, the marital problems between them, and her characterization of her relationship with her daughter as "partners" supported Dr. Matthew's opinion.

Defendant correctly quotes the Illinois view for determining whether reversal is warranted: "The reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to defendant's guilt remains." *McCarthy*, 213 Ill. App. 3d at 880, 572 N.E.2d at 1223-24; *Evans*, 199 Ill. App. 3d at 336, 556 N.E.2d at 907; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.

The jury was justified in choosing to believe the victim, the witnesses who corroborated her testimony, and Dr. Matthew's expert opinion that the victim suffered from posttraumatic stress and that her family had problems typical of families where sexual abuse occurs. It was within the jury's province to believe this evidence over defendant's testimony that he did not commit the assaults and his suggestion that the victim concocted the allegations to keep her mother from reuniting with him. The evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

Defendant next argues the court erred by allowing out-of-court statements made by the victim to others about the sexual assaults. Defendant contends the statements lacked reliability. He also argues he preserved his right to appeal this issue because he objected to the

statements at the pretrial hearing to determine whether the corroborating witnesses' testimony was admissible.

The State argues defendant has waived his right to raise this issue because he did not specifically raise it at trial or in his post-trial motion. It also contends the plain error exception to the waiver rule does not apply because defendant's substantive rights were not affected by this ruling, nor is the evidence closely balanced.

In his post-trial motion, defendant complained about testimony by the coach, the school counselor, his ex-wife (the victim's mother), and Gosselin, the therapist from the counselling center. The basis for his complaint was not that this testimony was contrary to statutory requirements for allowing hearsay in a sexual assault case involving a child under age 13. Rather, he complained about the testimony because it was cumulative and contrary to the court's direction that witnesses not identify the alleged perpetrator. Defendant's other complaint about hearsay statements was only that the court erred by allowing the victim to testify about her conversation with the coach. Defendant did not object to testimony by the corroborating witnesses again at trial.

To preserve an argument for appeal, both an objection at trial and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274; *McCarthy*, 213 Ill. App. 3d at 884, 527 N.E.2d at 1226.) Although defendant raised the issue at the pretrial hearing, he did not object to the corroborating witnesses' testimony at trial. In addition, as the State contends, defendant's objection in his post-trial motion is similar to the objection made in *People v. Bailey* (1988), 177 Ill. App. 3d 679, 682, 532 N.E.2d 587, 589-90, because defendant's objection on appeal was not specifically raised in his post-trial motion. The plain error rule would not apply in this case because defendant was not denied any substantial right by the use of this evidence. (*Enoch*, 122 Ill. 2d at 199, 522 N.E.2d at 1136; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *Bailey*, 177 Ill. App. 3d at 682, 532 N.E.2d at 590.) The State is correct that defendant waived this issue.

Nevertheless, considering the arguments which were raised by defendant, the victim's hearsay statements were properly admissible. The assaults defendant was convicted of occurred in 1985 and 1986 when the victim was under age 13. The victim reported these assaults to others in 1989 and 1990. Defendant argues allowing other individuals to testify about the victim's statements to them when the victim

did not divulge this information until four years after the alleged assaults is contrary to the relevant statutory hearsay exception.

■ Section 115—10(b) of the Code of Criminal Procedure of 1963 (Code) outlines when testimony about out-of-court statements by an alleged victim of sexual acts who is under age 13 can be admitted as an exception to the hearsay rule:

"(b) Such testimony shall only be admitted if:

(1) the court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." Ill. Rev. Stat. 1989, ch. 38, par. 115—10(b).

The parties agree we must examine only those circumstances surrounding the making of the statements to determine whether the statements were sufficiently reliable to have permitted this hearsay testimony because the victim's statements were "particularly worthy of belief." *People v. Coleman* (1990), 205 Ill. App. 3d 567, 584, 563 N.E.2d 1010, 1021.

Defendant argues the statements made by the victim lacked reliability because of the time lapse between the time when the acts allegedly occurred and when the victim told these individuals about the assaults, and also because of the surrounding circumstances when the statements were made. In regard to the timing of the victim's reports to others about the assaults, defendant contends her reports were not reliable because the victim did not claim defendant threatened her in any way, and because at ages 10, 11, and 12, when the assaults allegedly occurred, she was not a small child. Defendant contends the victim's explanation that she did not report the assaults earlier because she was ashamed and embarrassed does not make her reports reliable. He argues the victim had a motive to make up the allegations to keep her mother from reuniting with him.

Defendant also questions the victim's delay in telling someone else about the assaults after telling her coach. He notes there was a several-month delay between when she told her coach in early 1989 and when she told the school counselor in the fall of 1989. Defendant also contends the statement's reliability is questionable because although the victim had school physicals after the alleged assaults, she never divulged she had been assaulted.

■ The State argues the surrounding circumstances render the victim's statements sufficiently reliable. We agree with the State's analysis of the victim's statements, and conclude her statements were sufficiently reliable to permit the testimony about her statements.

The victim reported the assaults to role models in positions of authority, such as her basketball coach and a high school counselor. The precipitating event, a discussion of a team member being inappropriately touched, explains the victim's sudden recall of the assaults. In addition, several witnesses recounted the victim was very nervous when reporting the incident and she was hesitant about her mother finding out. The victim's anxiety while making her statements does not suggest a teenager who is fabricating a story. In addition, the consistency of her statements made to different people support the finding her statements were reliable. The victim's school physicals consisted only of evaluating general health concerns and did not entail full physicals during which the victim may have thought to discuss the assaults. The victim's explanation that she did not remember the assaults until the precipitating event occurred at school is also plausible. She may not have remembered the assaults during her physicals.

The circumstances surrounding the victim's statements to other witnesses about defendant's assaults upon her support the view that her statements were worthy of belief. Based on the objections raised by defendant, the court did not err by permitting hearsay testimony about her statements.

We note an interesting question that is absent from defendant's arguments. Promptness in reporting the abuse is not an element of section 115—10. (*People v. Cregar* (1988), 172 Ill. App. 3d 807, 526 N.E.2d 1376.) However, whether section 115—10 applies when the alleged sexual acts occurred before the victim reached age 13, but the victim's statements were not made until the victim was 13 or older, has yet to be addressed by this court. Although we leave this issue for another day, even if defendant had raised this issue and we ruled the witnesses' testimony about out-of-court statements by the victim were inadmissible under section 115—10, the remaining evidence would have been more than sufficient to convict defendant.

Defendant next argues his conviction must be reversed because the judge improperly instructed the jury about what it should consider in evaluating the weight and credibility of the hearsay testimony by failing to give a particular instruction. (Illinois Pattern Jury Instructions, Criminal, No. 11.67, at 193 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d No. 11.67 (Supp. 1989)).) Although the State concedes the

instruction was not given, it argues defendant waived this argument, and alternatively, the error was harmless.

When, as in the instant case, out-of-court statements are admitted pursuant to section 115—10(c) of the Code, the court should provide a specific instruction about how the jury should evaluate the weight and credibility of the testimony:

"[T]he court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." Ill. Rev. Stat. 1989, ch. 38, par. 115—10(c).

See IPI Criminal 2d No. 11.67 (Supp. 1989).

The trial judge in this case specifically questioned whether the above instruction should be provided. Both counsel *agreed* it should not be given. After all evidence was presented, the trial court instructed the jury as follows:

"You are the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

This is the standard pattern jury instruction given in criminal cases on the jury's function in assessing the weight to be given the witnesses' testimony. Illinois Pattern Jury Instructions, Criminal, No. 1.02, at 6 (2d ed. 1981).

The State correctly notes defendant did not tender the appropriate instruction to the court, nor did he object to the instruction given at trial or in his post-trial motion. Failure to object to a jury instruction waives the issue. (*People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742, 743; *People v. Huckstead* (1982), 91 Ill. 2d 536, 543, 440 N.E.2d 1248, 1251; *People v. Mattingly* (1989), 180 Ill. App. 3d 573, 576, 536 N.E.2d 257, 259.) Moreover, defendant's counsel specifically agreed that IPI Criminal 2d No. 11.67 (Supp. 1989) ought not be given. It is anomalous for him to now complain that it was not given.

Defendant argues, however, that failure to properly instruct the jury constitutes plain error because it denied him a fair trial. Defendant contends the instruction given did not advise the jury of the specific factors to consider in weighing the credibility of the out-of-court

statements. Specifically, he complains that the jury was not told to consider the victim's age and maturity and the circumstances under which the statements were made. The particular circumstance which defendant argues the jury did not know to consider was the victim's delay in reporting the alleged assaults. Defendant suffered no harm from the instruction given.

■ As the State aptly notes, the standard instruction given advised the jurors to consider the witness' ability and opportunity to observe. This impliedly advised them to consider the victim's age. In addition, the jury was told it could consider the witness' memory, consideration of which would address the victim's delay in reporting the assaults. Although the specific instruction required by section 115—10(c) of the Code was not given, the error was harmless and not subject to the plain error rule because defendant was not denied any substantial right. (*Enoch*, 122 Ill. 2d at 189, 522 N.E.2d at 1131; *Pickett*, 54 Ill. 2d at 282, 296 N.E.2d at 858.) Defendant waived the issue by not objecting at trial and in his post-trial motion.

Defendant argues absent plain error, this court must reverse his conviction because his counsel was ineffective by not tendering the proper instruction. To establish ineffective assistance of counsel, defendant must show counsel's representation fell below an objective standard of reasonableness and it prejudiced him such that he was denied a fair trial. (*People v. Horton* (1991), 143 Ill. 2d 11, 23, 570 N.E.2d 320, 325; *Strickland v. Washington* (1984), 466 U.S. 668, 695, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) A court of review need not evaluate whether counsel's performance was deficient before examining the prejudice prong. To meet the prejudice prong, defendant must show there is a reasonable doubt respecting guilt. *Horton*, 143 Ill. 2d at 23, 570 N.E.2d at 327; *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.

■ Defendant has not shown how the instruction given, as opposed to the statutory instruction which should have been tendered, denied him a fair trial. As discussed above, the instruction adequately advised the jurors about relevant considerations it should include in making its decision. We need not decide whether defense counsel's failure to tender the statutory instruction was deficient representation of defendant, because we find defendant was not prejudiced by the use of the standard instruction and the omission of IPI Criminal 2d No. 11.67 (Supp. 1989).

Defendant finally argues the trial judge should not have tried the case because, around the time the alleged assaults were occurring, the judge was a practicing attorney and represented the victim's natural

father in divorce proceedings and proceedings to modify the divorce decree between him and the victim's mother.

The State has supplied a bystander's report showing defendant's trial attorney and the prosecutor agree the judge informed them of this previous representation "well before" defendant's trial began, and that both agreed there was no need to make a record of the judge's disclosure, and they elected to proceed with the judge despite this previous representation of one who was not a party to defendant's criminal trial in any way. The State also argues defendant waived this issue by not raising it at trial or in his post-trial motion. Although defendant has waived this issue, we choose to address it because of the implication of judicial impropriety.

Canon 3(C)(1)(a) of the Code of Judicial Conduct (Code) provides in pertinent part, as follows:

> "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where
>
> (a) he has a personal bias or prejudice concerning a party or his lawyer ***."

134 Ill. 2d R. 63 (Canon 3(C)(1)(a)).

■ Defendant argues that, although the supplement to the record shows defense counsel and the prosecuting attorney knew about the judge's prior representation of the victim's natural father, this does not show defendant was informed about the judge's potential lack of impartiality. He contends he was not informed and this raises two issues. First, he argues counsel was ineffective because he did not tell defendant about the judge's potential conflict, thereby providing defendant an opportunity to request a different judge. However, he again fails to show his counsel's action amounts to prejudice which would have materially affected the outcome of his trial. *Horton*, 143 Ill. 2d at 23, 570 N.E.2d at 325; *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.

Defendant next argues the judge's previous representation of the victim's natural father may have affected the judge's impartiality. Nothing in the record shows the trial judge should have recused himself. Courts of review apply a strong presumption the trial judge relies only on proper evidence. (*People v. Berland* (1978), 74 Ill. 2d 286, 310, 385 N.E.2d 649, 660.) Nothing in the record indicates the trial judge in this case acted otherwise.

In *People v. Del Vecchio* (1989), 129 Ill. 2d 265, 544 N.E.2d 312, *cert. denied* (1990), 494 U.S. 1062, 108 L. Ed. 2d 779, 110 S. Ct. 1540, the Illinois Supreme Court ruled the trial judge did not have to

recuse himself from hearing defendant's case when the judge had no direct, personal interest in seeing defendant punished. The court reasoned a judge need not recuse himself any time he has "knowledge of, contact with, or an interest" in the case over which he is presiding. (*Del Vecchio*, 129 Ill. 2d at 277, 544 N.E.2d at 318.) The trial judge was a State's Attorney during a previous case involving the defendant. The judge, when State's Attorney, assigned the case to another attorney and agreed to expedite defendant's indictment. The court stated the judge never acted "as counsel" in defendant's case and defendant did not show sufficient prejudice or bias of the judge. *Del Vecchio*, 129 Ill. 2d at 277-78, 544 N.E.2d at 318.

Defendant in this case argues the trial judge may have been prejudiced, but provides no evidence any such prejudice existed. As in *Del Vecchio*, defendant fails to show any prejudice or bias of the judge.

Canon 3(C)(1)(a) of the Code requires disqualification only when the judge is familiar with *a party* or *party's counsel*. (134 Ill. 2d R. 63 (Canon 3(C)(1)(a)).) Although it also requires recusal whenever the judge's impartiality could reasonably be questioned, we find no evidence the trial judge was biased with respect to defendant. (134 Ill. 2d R. 63 Canon 3(C)(1).) There was no error in the trial judge presiding over defendant's case.

Defendant's conviction was proper. The evidence established his guilt beyond a reasonable doubt. Evidence of the victim's out-of-court statements about the aggravated assaults was properly admitted. Although the court did not use the specific statutory language when instructing the jury how to weigh credibility of the out-of-court statements, defense counsel acquiesced in the specific instruction not being given, and the standard instruction which was given provided the jury adequate guidance and included all relevant considerations. Finally, there was no reason for the trial judge to recuse himself from presiding over defendant's trial. We affirm the trial court.

Affirmed.

GREEN, P.J., and McCULLOUGH, J., concur.