THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MORTON WALKER, Defendant-Appellant.
First District (3rd Division)   No. 1—91—1773

Opinion filed September 29, 1993.

Richard S. Connors, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth McCurry, and Annette Collins, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant Morton Walker was convicted of aggravated criminal sexual assault of a nine-year-old female and sentenced to 20 years' imprisonment.

Defendant contends (1) he was denied effective assistance of counsel because of numerous errors by his trial attorney; (2) the court erred in admitting hearsay evidence of the victim's statements to several people about the assault; (3) the trial court erred in sentencing by considering the victim's age as an aggravating factor; and (4) the trial court showed bias against defendant when it refused to appoint a public defender or allow a withdrawal or substitution of counsel.

We affirm the conviction and sentence.

The victim, S.B., lived with her mother and six brothers and sisters in April 1990, when the incidents occurred. Although defendant was not S.B.'s biological father and did not live at the victim's house, the defendant and S.B.'s mother had five children together, and S.B. identified the defendant as her father.

S.B. testified that on or about April 22, 1990, S.B. was home alone with defendant when he asked her to go into her mother's bedroom to "scratch his head." In the bedroom, defendant removed S.B.'s panties, unzipped his own pants and put his "privacy" into her "privacy" and into her mouth. S.B. testified that he did the

same thing to her again two more times that day. He cautioned her not to tell anybody or he would whip her.

When shown anatomical dolls at trial, S.B. identified the male "privacy" as the penis and the female "privacy" as the vagina. S.B. testified that she told her mother, her brother, police and doctors about the incidents. S.B. also stated that defendant had visited her several months before the trial and again the day before she testified at trial, and told her "to tell them that some big boys had did that to me [sic]." On cross-examination, S.B. testified that all three incidents had occurred on a Sunday, which she remembered because she watched a certain weekly television program that evening. She stated that she told her mother about the incidents the day after they occurred.

Willie B., S.B.'s 12-year-old brother, testified that on April 22, 1990, he saw S.B. in his mother's bedroom, watching television while defendant was lying on the bed. Willie left when defendant told him to look for his mother. When he returned, he saw S.B. in the bedroom with defendant, scratching his head. Willie left again to return to find S.B. lying on the bed, crying. Willie then saw defendant standing in the closet with his pants unzipped and his penis exposed. While Willie did not observe defendant having contact with S.B., she later told him what had occurred in his absence.

Catherine Lachenauer was a doctor working in the emergency room of the hospital on Thursday, April 26, 1990, when S.B. was admitted. S.B. told her that her father had "put his thing" "in my stuff" three times and that he had also "made me suck his privates." The doctor found that S.B.'s vaginal area was red, her hymenal wall was thin and there was a grayish discharge. The doctor found S.B.'s hymenal opening to be enlarged, indicating trauma. Dr. Lachenauer stated that the results of her examination of S.B. were abnormal and "very supportive of a diagnosis of sexual abuse."

On cross-examination, Dr. Lachenauer admitted that S.B. had informed her that the three assaults occurred on different days, and the only date S.B. specified was "the day before yesterday," which would have been Tuesday, April 24, 1990. The doctor acknowledged that there was no way to determine when the alleged abuse occurred or for how long the hymenal opening had been enlarged.

Police officer Thomas Scott testified that on April 26, 1990, he investigated a dispatch call concerning a rape victim, and after interviewing S.B. and her mother, arrested defendant. On cross-examination, Officer Scott testified that S.B. told him the assaults oc-

curred on Tuesday, April 24, 1990, and that her mother told him the incidents occurred on more than one date.

Dr. Carl Turner testified for the defense as an expert in gynecology, stating that hymenal openings can vary from child to child, and that S.B.'s enlarged opening does not by itself indicate abuse. On cross-examination, Dr. Turner admitted he had not examined S.B., nor had he spoken with her or her doctor. He further admitted to being the brother of defense counsel; that he had been arrested for unlawful use of a weapon; and that his driver's license was suspended because he provided false information on the application.

Defendant testified that on April 26, 1990, he arrived at S.B.'s apartment at approximately 8:30 a.m., gave S.B.'s mother $30, and told S.B. to stay home from school so he could buy her new shoes. He left the apartment, returning at about 5 p.m. to sleep on the couch, and was awakened two hours later by police who arrested him. Defendant denied ever assaulting S.B. in any way and denied telling S.B. to testify that "some big boys" had assaulted her. In rebuttal, the State impeached defendant with a misdemeanor theft conviction, after which defendant testified that he pleaded guilty to the theft of a car battery from an abandoned car.

Defendant first contends that he was denied effective assistance of counsel since his attorney: failed to adequately prepare for trial; destroyed defense credibility by calling as an expert witness counsel's brother, who was improperly impeached; failed to deliver a promised defense; failed to object to the victim's hearsay testimony; and failed to elicit defendant's theft conviction during direct examination.

A two-pronged test governs ineffective assistance of counsel claims: (1) counsel's performance must fall well below an objective standard of reasonableness, and (2) there must be a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525-27, 473 N.E.2d 1246.) A "reasonable probability" is a probability that undermines confidence in the jury's verdict. *Strickland v. Washington* (1984), 466 U.S. 668, 696, 80 L. Ed. 2d 674, 696, 104 S. Ct. 2052, 2069.

A reviewing court will apply the test in light of all relevant circumstances and under a strong presumption of adequacy and reasonableness. (*People v. Barrow* (1989), 133 Ill. 2d 226, 247, 549 N.E.2d 240.) Such examination of counsel's representation does not generally review matters of judgment, discretion, or trial tactics or

strategy. (*People v. Pecoraro* (1991), 144 Ill. 2d 1, 13, 578 N.E.2d 942.) A court may dispose of an ineffective assistance of counsel claim for lack of sufficient prejudice before it ever reaches the deficiency analysis. *Albanese*, 104 Ill. 2d at 527.

We find no merit in defendant's claim of ineffective assistance of counsel.

Defendant contends that in opening argument his counsel promised the jury he would raise a particular line of defense:

"You will hear some testimony about where [S.B.] fits into the family scheme, third child, fourth child. I'm almost sure that will come out. Is that all that leads up to April 24th? Sometime, somewhere down the line, she is the second child or the first female. Is that all or was [*sic*] there other things that lead up to it?

The evidence will show you some aspects of that family life that led to the charges."

Defendant claims this statement indicates that counsel would present evidence that S.B.'s mother had tried in the past to remove defendant from the household and that S.B.'s charges were part of that scheme, or that S.B.'s birth order would somehow be linked to the charges.

■ We find the statement promises no such defense. At most, the garbled language appears to be an attempt to introduce the jury to the relationship between S.B.'s mother and defendant and the fact they had several children together, although S.B. was not one of them. We distinguish the cases defendant cites, where they involve counsel's failure to produce promised evidence regarding the existence of another suspect (*People v. Ortiz* (1992), 224 Ill. App. 3d 1065, 586 N.E.2d 1384), and counsel's failure to produce the promised expert's testimony regarding defendant's state of mind. *Anderson v. Butler* (1st Cir. 1988), 858 F.2d 16.

Contrary to those cases, we find that counsel here did not promise a "defense" but, at most, attempted to convey that the family relationships were disjointed. Further, the jury was informed that opening statements were not evidence and anything not in evidence should be disregarded.

The evidence appears overwhelming: (1) although S.B. was inconsistent or confused as to the date or dates the incidents occurred, she never wavered in her claim that on three occasions, defendant assaulted her by having intercourse with her and by making her perform fellatio on him; (2) S.B.'s allegations were corroborated by Dr. Lachenauer, who deemed her physical condition "very

supportive of a diagnosis of sexual abuse"; and (3) S.B.'s 12-year-old brother corroborated her testimony by stating that he saw S.B. and the defendant in the bedroom, then saw S.B. lying on the bed crying while the defendant stood in the closet with his pants unzipped and his penis exposed; and S.B. later told her brother that she was crying because defendant assaulted her.

Defendant next contends he was denied effective assistance of counsel because his attorney employed his brother as an expert witness at trial. Defendant contends the jurors would have to assume that counsel called his brother to testify because no other qualified gynecologist would testify for defendant and thus conclude that the entire defense lacked integrity or credibility.

■ We disagree. Defense counsel's brother, Dr. Carl Turner, was an experienced gynecologist who had testified as an expert witness in numerous trials, although never for defense counsel. Dr. Turner directly challenged the testimony of the victim's expert by stating that the measurement of the victim's hymenal opening indicates nothing because it is not known what its measurement was prior to the allegations, and stated that the irritation in the vaginal area could have been caused by masturbation.

We find that such a decision to retain Dr. Turner as an expert was a tactical or strategic decision, and further, defense counsel may have been very well aware of the witness' prior conviction, but believed his testimony would be worth the risk that the State might attempt to bring in an outdated conviction. We cannot say that retaining defense counsel's brother as an expert witness fell below an objective standard of reasonableness, and we are certainly unwilling to say that there is a reasonable probability that but for that action, the result would have been different.

Defendant claims that it was ineffective assistance of counsel to allow the State to impeach Dr. Turner by inquiring whether Dr. Turner had ever been arrested for unlawful use of weapons, and he acknowledged that he had. While the State never cross-examined Dr. Turner as to the date of his arrest or whether he was convicted, defendant states in his post-trial motion that Dr. Turner was convicted of the crime more than 10 years prior to his testimony here.

Defendant contends counsel was ineffective either in failing to object to an arrest as the basis of impeachment, or failing to inquire or insist that the State establish that he was convicted within the permissible 10-year time frame for impeachment purposes.

■ Although it must be conceded that such impeachment was improper, we find there was no basis for determining ineffective assistance of counsel in this instance.

A defense counsel's failure to object to evidence does not, in and of itself, establish incompetence. (*People v. Murphy* (1978), 72 Ill. 2d 421, 438, 381 N.E.2d 677; *People v. Thomas* (1991), 215 Ill. App. 3d 751, 762, 576 N.E.2d 37.) Even if we were to find that defense counsel's representation fell below an objective level of competence, the evidence here is not closely balanced and had the evidence of conviction been excluded, we do not believe that the jury's verdict would have been different.

Defendant next contends that he was denied effective assistance when counsel failed to object to alleged hearsay testimony of S.B.'s statements to her mother, brother and the police about the incidents. He argues that the trial court first failed to hold a statutorily required hearing to determine that the circumstances surrounding the statements insured their reliability (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(b)(1)), and then, when the statements were admitted, the court failed to specifically instruct the jury as to the factors to consider in determining the weight and credibility of the statements. (Ill. Rev. Stat. 1991, ch. 38, par. 115—10(c).) Defendant contends he was prejudiced by counsel's failure either to object to the complaints or to request the statutory instruction.

Where a declarant is available in court or there is an opportunity to ascertain the veracity of the testimony by cross-examination, there is no hearsay issue. *People v. Williams* (1990), 202 Ill. App. 3d 495, 500, 559 N.E.2d 1158.

Defendant in *Williams* charged ineffective assistance of counsel where defense counsel failed to object to the testimony of an 11-year-old sexual assault victim who testified that she told her mother that defendant had assaulted her. The court found no hearsay problem since the victim was subject to cross-examination, and also found that even if defense counsel had objected, there was no reasonable probability that defendant would have been found not guilty. *Williams*, 202 Ill. App. 3d at 500.

■ A similar situation obtains in the present case, where S.B. testified in court and thus was available for cross-examination. Defense counsel thoroughly cross-examined S.B. regarding her statement, other evidence overwhelmingly corroborated her statement, and even if counsel had objected we cannot say there was a reasonable probability that but for counsel's error, the result would have been different.

We also find it was not ineffective assistance of counsel when defense counsel failed to request that the section 115—10(c) instruction be given for a child witness in a sexual assault case. That instruction states:

"If a statement is admitted *** the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." Ill. Rev. Stat. 1991, ch. 38, par. 115—10.

The standard pattern instruction given advised the jury to consider the witness' ability and opportunity to observe, and to consider the witness' memory. (Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1981).) From this, the jury could have considered any alleged problems with the victim's testimony: her age, memory or any alleged "confusion" as to the timing of the incidents.

Although a section 115—10(c) instruction would have been appropriate, the jury was still instructed to consider possible flaws in the victim's testimony and defendant was not denied any substantial right. See *People v. Booker* (1992), 224 Ill. App. 3d 542, 556, 585 N.E.2d 1274.

Defendant also complains that defense counsel "embarrassed" defendant by failing to elicit defendant's prior felony conviction on direct examination, leaving the State to question him about it on cross-examination, and making it appear that the defense attempted to conceal the conviction. Defendant contends that this failure contributed to ineffective assistance of counsel.

■ Although anticipatory disclosure of convictions is allowed to deflect its prejudicial impact, we do not find that failure to do so amounts to ineffective assistance of counsel. This incident is a minor one in a case where the evidence is not closely balanced.

Defendant also expresses concern that there were discrepancies in both S.B.'s and her brother's testimony as to the timing of the incidents. However, any shortcomings in a victim's testimony do not destroy credibility but merely affect the weight to be afforded to the testimony by the trier of fact. *Booker*, 224 Ill. App. 3d at 550.

■ As we have stated, S.B.'s material allegations of the assaults did not waver at trial; her allegations were corroborated by Dr. Lachenauer's testimony and by her brother's testimony. Any mi-

nor discrepancies as to dates or time were taken into account by the jury when it weighed the witnesses' testimony.

Further, the trial court stated at the sentencing hearing that defendant was vigorously represented and that defense counsel was a strong advocate who represented defendant's position "very forcefully and at every opportunity." We find no ineffective assistance of counsel.

Defendant next charges that it was reversible error for the trial court to admit S.B.'s statements made to her mother, brother and the police about the incidents. Defendant argues such statements were not attended by circumstances which allow their admission as exceptions to the hearsay rule, nor were the statutory requirements of section 115—10 fulfilled in order to admit them.

Section 115—10 provides that in a prosecution for a sexual act perpetrated upon a child under the age of 13, certain evidence may be admitted as an exception to the hearsay rule:

"(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(c) If a statement is admitted *** the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." Ill. Rev. Stat. 1991, ch. 38, par. 115—10.

Here, defendant failed to raise an objection at trial or in his post-trial motion to the alleged hearsay testimony and he has

waived this issue on appeal. *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124; *People v. Dugan* (1992), 237 Ill. App. 3d 688, 698, 604 N.E.2d 1117 (while no section 115—10 hearing was held, defendant waived the issue since he failed to request a hearing or object to its absence during trial or post-trial motions); *Booker*, 224 Ill. App. 3d at 552 (issue based upon section 115—10 jury instruction requirement waived due to failure to raise in a post-trial motion); *People v. Mitchell* (1991), 215 Ill. App. 3d 849, 859, 576 N.E.2d 78 (contention of an improper section 115—10 hearing was waived due to failure to raise in post-trial motion).

We decline to review this issue under the plain error doctrine since we have found the evidence is not closely balanced, nor do we find defendant was denied a fair trial. *Dugan*, 237 Ill. App. 3d at 698; *People v. Bailey* (1988), 177 Ill. App. 3d 679, 682, 532 N.E.2d 587.

Defendant next charges that the trial court improperly considered the victim's age as an aggravating factor in sentencing.

In sentencing defendant, the court stated that it had taken into account the presentence report:

"THE COURT: But we also take into account the seriousness of this offense and based upon all of those things the Court is going to—the Court is going to impose a sentence—it will be an extended term. I believe that there's a basis for that.

Just one second.

Okay. this is—I'm referring specifically to Chapter 38, section 1005—5—3.2b, four, one, if the Defendant is convicted of a felony against a person under twelve years of age—I think that that is certainly an ample basis under the circumstances.

So, there will be an extended term. The sentence will be twenty years.

Prosecutor: Excuse me, Your Honor *** I'm confused. The maximum normal sentence for this would be thirty years. This is a Class X felony, right?

THE COURT: I'm sorry. I'm looking at—excuse me, I'm looking at the wrong one. I'm looking at a Class One. It's not an extended term. It is within the term but the sentence will be twenty years.

It's not under the extended term.

The sentence will be twenty years in the Illinois Department of Corrections followed by three years of mandatory supervised release."

We note that defendant also failed to raise this issue at trial or in his post-trial motion, which denied the trial court an opportunity to sustain an objection or remedy an error; thus, the issue is considered waived. *Enoch*, 122 Ill. 2d at 186.

■ Further, if we were to determine this issue, we would find it clear that the trial judge considered proper factors in aggravation and in mitigation, and that the court was merely reading aloud what it thought was the applicable section of the statute which would apply to defendant's situation. While the section read does refer to the victim's age, when the court realized that it could give defendant an even harsher sentence than he received, it refrained from doing so, and nothing in the record indicates that consideration of the victim's age denied defendant justice or was a factor in the sentence given.

Finally, defendant contends he was denied a fair trial because the trial court refused to appoint a public defender; refused to allow uncompensated private defense counsel to withdraw as the attorney of record; and refused to allow another attorney to substitute as attorney of record during post-trial proceedings.

While an indigent defendant is entitled to representation by court-appointed counsel, where a defendant has some assets or funds available, the determination of indigence is left to the sound discretion of the trial court. *People v. Kennedy* (1990), 204 Ill. App. 3d 681, 685, 561 N.E.2d 1347.

In the case at bar, defense counsel had represented defendant for three months when he requested leave to withdraw on grounds that defendant did not have sufficient funds to pay his fees. At the hearing to determine if defendant was entitled to a public defender, it was learned that defendant was released on a $50,000 bond, but apparently the money was not available to be used for attorney fees. The public defender's office objected to representing a person who had such resources, and the court continued the motion twice.

After the continuation of the motion, counsel represented defendant on several court dates and never raised the issue of obtaining new counsel. On the day set for jury trial, four months after the last hearing on the issue, counsel advised the court of its desire to withdraw due to defendant's inability to pay his fees.

■ We do not find the trial court's determination that defendant was not entitled to a public defender to be an abuse of discretion. There was $5,000 available for a defense, counsel continued to represent defendant without further raising the issue of new coun-

sel and advised the trial court on several occasions that he would soon be ready for trial.

Further, we find no error in the court's refusal to allow defense counsel to withdraw and to subsequently appoint substitute counsel.

The right to choose one's own attorney is limited and must be balanced against the public need for the efficient administration of criminal justice. (*People v. Phelps* (1990), 197 Ill. App. 3d 954, 957, 557 N.E.2d 235.) A motion for leave to withdraw for any reason is addressed to the sound discretion of the trial court. *People v. Catalano* (1963), 29 Ill. 2d 197, 204, 193 N.E.2d 797.

Here, defense counsel offered no good cause for the substitution of attorneys at the sentencing stage of the proceedings. The court refused to substitute counsel since the proposed substitute counsel had failed to appear prior to arguments on the motion for new trial, and found that attempts to substitute after arguments had begun were dilatory.

We do not find such determinations to be an abuse of discretion. Further, we find that defendant received a fair and impartial hearing by competent counsel, notwithstanding defense counsel's contempt citation for leaving the courtroom after the jury instructions conference had concluded although the court requested that he not do so. As we have noted, the trial court stated at the sentencing hearing that defendant was vigorously represented and that defense counsel was a strong advocate who represented defendant's position "very forcefully and at every opportunity."

We also note that the parties agree that the order of sentence should be corrected to reflect defendant's single conviction for violation of section 12—14(b)(1) (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)) rather than a conviction under 12—14(a)(2) (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(a)(2)), where 12—14(b)(1) provides that an aggravating factor of criminal sexual assault occurs if the defendant was over 17 years of age and the victim was under 13 years of age at the time of the assault.

For all of the foregoing reasons, the trial court's determination is affirmed.

Affirmed.

TULLY, P.J., and RIZZI, J., concur.