THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID HOUGH, Defendant-Appellant.

Fifth District    No. 5—89—0653

Opinion filed November 20, 1991.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Paul H. Hillis, Jr., State's Attorney, of Salem (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Defendant, David Hough, was charged in the circuit court of Marion County with three counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14). Count I was based on an incident which occurred on November 10, 1988, and counts II and III were based upon an incident which occurred on January 27, 1989. The victim was eight years old. Prior to trial, the State sought a motion *in limine* based upon the rape-shield statute precluding any evidence of prior sexual activity by the victim. The trial court granted this motion.

At defendant's bench trial on August 14, 1989, the victim testified that the defendant lived with her and her mother. While living there, defendant forced her to perform various sex acts on numerous occasions. The victim testified to the specific incidents of abuse incidents upon which the charges were based. The victim further testified that when Charlotte Groves, a Department of Children and Family Services (DCFS) child-welfare specialist, came to the house, defendant hid under the bed so he would not be seen. On cross-ex-

amination, the victim admitted that she lied on occasion and that other adult males had done to her the same things that defendant had done. Also, she denied defendant's allegation that she had initiated the incident on November 10, 1988.

Darlene Phillips testified that she attended church with the victim and her mother, and that after Sunday school on January 29, 1989, the victim seemed very upset about something. Phillips stated that the victim told her that she did not like the man her mother was going to marry, that he was mean to her, and that he fondled her in ways she did not like. Phillips reported this conversation to DCFS.

Diane Johnson, a DCFS worker, visited the household on January 29, 1989, to investigate possible sexual abuse. The victim, her mother, and an infant were present. The victim denied making the statement to Phillips and denied that anyone hurt her or touched her. The victim nodded affirmatively when Johnson asked if she was afraid to speak to her.

Charlotte Groves and Nelson Adams, also a DCFS child-welfare specialist, interviewed the victim at school on January 30, 1989. The victim told them that defendant had sexually abused her on at least 20 occasions, the last of which had occurred the night before. The victim further indicated that her mother had told her not to tell anyone that defendant was living with them, and that defendant had hidden from DCFS workers on numerous occasions. Adams later interviewed the victim in the presence of her mother, but her mother gave the victim little opportunity to speak and accused her of lying.

Adams and Regina Shelton, another DCFS worker, then interviewed defendant. At first, he denied any sexual contact with the victim but then stated that on one occasion, he awoke to find the victim performing a sex act on him. He also admitted hiding from DCFS workers.

Richard Simer, a police investigator, testified that he took defendant's statement. The defendant stated that on one occasion he awoke to find the victim performing a sex act on him. The defendant also stated that he hid from visiting DCFS workers because he was not supposed to be living with the victim's mother and was afraid that DCFS would take the children away were he found there.

The victim's mother was called to testify, but she invoked her fifth amendment right not to testify. She had pleaded guilty to simi-

lar charges and a motion to withdraw that plea was pending at the time of trial.

Dr. Alexander James, a clinical psychologist, testified that he had examined the victim and found her to be "physically provocative" and "sexually overstimulated," both symptoms of sexual abuse. Dr. James also testified that the victim's willingness to discuss her sexual experiences, and the degree of detail with which she was willing to discuss them, varied from session to session, something Dr. James described as a characteristic response of young sexual-abuse victims.

Charlotte Groves testified that the victim was placed with foster parents, Larry and Amanda Verner, for several weeks but had to be removed because she was uncontrollable. Groves testified that Mrs. Verner reported that the victim was sexually provocative toward Mr. Verner, the victim was sent to several other foster homes and eventually hospitalized for observation. She was in the hospital at the time of trial. Groves admitted writing a letter to Dr. James in February of 1989 indicating that the victim might have been confusing men and acts of abuse. Groves stated that when she interviewed the victim on January 30, 1989, the victim had no trouble distinguishing men and acts of abuse.

The defendant testified that he knew the victim had been previously abused by other men and stated that she approached him sexually on several occasions. He further testified that on one occasion in November of 1988, he awoke to find her performing a sex act on him. He pushed her away but did not tell anyone. Defendant denied the January 1989 incident and stated that he had never sexually abused the victim.

The trial court found defendant guilty on all three counts. At a subsequent sentencing hearing the trial court considered as factors in aggravation the defendant's continued protestations of innocence despite having been found guilty, that the victim suffered serious harm, that defendant's conduct magnified the victim's psychological problems, that defendant had pleaded guilty to a prior charge of indecent liberties, and that defendant was in a special position of trust or supervision. The trial court also considered as a factor in mitigation the fact that defendant had no history of criminal activity for 10 years prior to commission of the present offenses. The trial court also determined that consecutive sentences were mandated by section 5—8—4(a) of the Uniform Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a)) and sentenced defendant to three 30-year consecutive terms of imprisonment.

Defendant argues first that the trial court erred in excluding evidence of the victim's prior sexual abuse and previous false accusations of abuse. Defendant failed to advance this argument in a post-trial motion, however, and it is therefore waived. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

■■ Defendant contends that should this court find that his argument is waived, then it must be found that his trial counsel was ineffective for failing to include it in his post-trial motion. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) Defendant fails to meet the latter requirement. The essence of defendant's argument with respect to the motion *in limine* and the rape-shield statute is that it prevented him from demonstrating that the victim's detailed sexual knowledge could have been the result of abuse by others and not by him. The record clearly demonstrates, however, that notwithstanding the ruling on the motion *in limine* such evidence was introduced through testimony by both the defendant and the victim, and the trial court stated several times that it was aware that the victim had been sexually abused by other men. Defendant suffered no prejudice by counsel's failure to include the rape-shield-statute argument in a post-trial motion, and his claim of ineffective assistance of counsel therefore fails.

■ Defendant also contends that the rule in *Enoch* violates the constitution's guarantee of equal protection. Specifically, defendant argues that criminal defendants are treated differently from civil defendants in that criminal defendants are required to preserve issues in a post-trial motion whereas civil defendants are not. Such disparate treatment, defendant maintains, serves no compelling or legitimate State interest. Our supreme court in *Enoch* implicitly recognized two classes of defendants, civil and criminal, and we cannot say that this distinction is without rational basis given the distinctly different interests involved. Statutes and rules are presumed to be constitutional, and the burden of proving otherwise is on the challenger. (*People v. Bales* (1985), 108 Ill. 2d 182, 483 N.E.2d 517.) We find that defendant has not met that burden in this case.

Defendant next argues that he was not proved guilty beyond a reasonable doubt. The applicable standard of review to challenges

to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) Citing *People v. Findlay* (1989), 177 Ill. App. 3d 903, 532 N.E.2d 1035, and *People v. Green* (1986), 140 Ill. App. 3d 35, 487 N.E.2d 1270, defendant maintains that to sustain his conviction, the victim's testimony must be found to have been clear and convincing, or be substantially corroborated by other evidence. The clear-and-convincing or substantially corroborated standard is no longer applicable having been abrogated by our recent decision in *People v. Meador* (1991), 210 Ill. App. 3d 829, 568 N.E.2d 1386. Following our supreme court's decision in *People v. Pintos* (1989), 133 Ill. 2d 286, 549 N.E.2d 344, this court in *Meador* held that the *Collins* standard of review applied to all criminal cases including those involving sex offenses. In addition, our supreme court recently held in *People v. Schott* (1991), 145 Ill. 2d 188, that the *Collins* standard was applicable to claims of evidentiary insufficiency in sex-abuse cases.

■ With the *Collins* standard in mind, we turn to a brief review of the evidence. The victim testified that defendant had sexually abused her on numerous occasions, including the evening of January 29, 1989. Such testimony demonstrated detailed sexual knowledge. Testimony was introduced, however, that the victim had been sexually abused by other men, implying that such other abuse was the source of the victim's detailed knowledge. Defendant admitted that the November 10, 1988, incident occurred but denied the January 29, 1989, incidents. Defendant testified he was asleep at the time the November 10, 1988, incident occurred and pushed the victim away upon awakening. As trier of fact, the court was charged with the duty of weighing defendant's credibility and was free to disbelieve his story. (*People v. Vazquez* (1990), 194 Ill. App. 3d 516, 551 N.E.2d 656.) Given the evidence, a rational trier of fact could easily conclude that defendant's testimony was untruthful and that he was guilty beyond a reasonable doubt of the offenses charged.

Defendant next argues that the trial court erred in finding that section 5—8—4(a) of the Uniform Code of Corrections required consecutive sentences. Section 5—8—4(a) provides in pertinent part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the

nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or *where the defendant was convicted of a violation of section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively.* (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a).)

Defendant maintains the statute mandates consecutive sentences for multiple violations of section 12—14 (aggravated criminal sexual assault) only where they are part of a single course of conduct. Defendant argues that the ban on consecutive sentences for offenses committed as part of a single course of conduct is a general rule to which there are two exceptions. The first exception is where one of the offenses was a Class X or Class 1 felony and the defendant inflicted severe bodily harm. The second exception is where the defendant was convicted of a violation of section 12—13 or 12—14. Defendant's theory is that the final clause of the sentence, "in which event the court shall enter sentences to run consecutively," becomes operative only where one of the two exceptions applies. Where neither exception is applicable, the argument runs, the general rule prevails and consecutive sentences are not mandated. Because the November 10, 1988, offense was not part of the same course of conduct as the January 29, 1989, offenses, defendant maintains, the trial court erred in finding that the sentence for that offense had to be consecutive to the sentences for the other two.

This argument was advanced by the defendant in *People v. Ewald* (1991), 210 Ill. App. 3d 7, 568 N.E.2d 451. The court in *Ewald* found that the language of the statute was "arguably unclear" and that the statute could arguably be interpreted as mandating consecutive sentences only where the offenses were part of a single course of conduct, but the court held that the comments made during the legislative debate did not support such an interpretation and that it was "unlikely the legislature intended to authorize a mandatory consecutive sentence in cases where a section 12—13 or 12—14 violation stems from a single course of conduct" and not where multiple violations arise from separate courses of conduct. *Ewald*, 210 Ill. App. 3d at 10, 568 N.E.2d at 453.

■ We believe the *Ewald* court's resolution of this issue to be correct. The primary role of statutory construction is to ascertain legislative intent and give effect to it. Where the language of a statute is ambiguous, as is the language of section 5—8—4(a), and admits to alternate constructions, a reviewing court should select

one which leads to a logical result and reject those which would lead to an absurdity. (*People v. Jones* (1985), 134 Ill. App. 3d 1048, 481 N.E.2d 726.) We believe the *Ewald* court's interpretation of section 5—8—4(a) does just that. It is neither reasonable nor logical that the legislature intended to mandate consecutive sentences for violations of sections 12—13 and 12—14 only where such violations are part of a single course of conduct. We hold that section 5—8—4(a) mandates that a sentence for a violation of sections 12—13 and 12—14 be made consecutive in statutes for other offenses regardless of whether the section 12—13 or 12—14 violation and the other violations were part of a single course of conduct.

Defendant next argues that section 5—8—4(a) is unconstitutional because there is no rational basis for distinguishing between offenses committed as part of a single course of conduct and those committed as separate and distinct acts over a period of time. Having already determined that section 5—8—4(a) mandates consecutive sentences regardless of whether the offenses were committed as part of a single course of conduct or as separate and distinct acts, we need not address this contention further.

Defendant's final argument is that the trial court abused its discretion in imposing 30-year terms of imprisonment for each offense and in ordering them to be served consecutively. Defendant contends that such sentences were not warranted by the nature of the offenses, nor were they necessary to protect the public from further harm by the defendant. Specifically, defendant maintains that the trial court erred in considering that he maintained his innocence of these offenses and of a previous offense after having been found guilty, and that he had committed other uncharged acts of abuse against the victim, that the court improperly punished him for the harm others caused to the victim, that the court placed undue emphasis on his 10-year-old conviction for indecent liberties with a child, and that the sentences are excessive when compared to sentences imposed in other cases for similar offenses.

■ When considering a defendant's rehabilitative potential, a court may, under certain circumstances, take into consideration a defendant's willingness to be under oath. (*People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422.) Although it may be argued that this violates a defendant's fifth amendment right against self-incrimination, we do not interpret the fifth amendment as protecting a right to commit perjury. A defendant need not testify against himself, but if he chooses to take the witness stand and testify, he has a duty to testify truthfully, and the court is well within its right

to consider how a defendant's willingness to lie under oath reflects on his character and rehabilitative potential. The court's finding of guilt beyond a reasonable doubt necessarily implies a finding that defendant lied. After reviewing the record, we do not find the trial court's consideration that defendant's continued insistence that he was innocent to be an abuse of discretion.

The trial court likewise properly exercised its discretion in considering the abuse perpetrated on the victim by the defendant was of an ongoing and habitual nature. (*People v. Stoutenborough* (1978), 64 Ill. App. 3d 489, 381 N.E.2d 415.) The victim so testified and several other witnesses testified that the victim had told them that the abuse was continual. The trial court found the victim's testimony to be credible.

With respect to defendant's third contention, a trial court may properly consider psychological harm to the victim when determining a sentence. (*People v. Ulmer* (1987), 158 Ill. App. 3d 148, 510 N.E.2d 1296.) In the present case, the trial court acknowledged that the victim had been abused by others but found that the abuse perpetrated by the defendant raised further harm, and it was for that additional harm that defendant was punished.

Regarding defendant's prior conviction, it is not improper to consider a prior conviction, even an old one, especially where that conviction was for a similar offense. (*People v. Daniels* (1983), 113 Ill. App. 3d 523, 447 N.E.2d 508.) We also note that the trial court considered as a factor in mitigation that defendant had no criminal history during the 10 years prior to the offense, demonstrating that the court balanced these two factors when determining defendant's sentence.

Finally, defendant's sentences are not excessive when compared to sentences for other similar offenses. See, *e.g., People v. Ortiz* (1987), 155 Ill. App. 3d 786, 508 N.E.2d 490 (defendant sentenced to 35 years for one count of criminal sexual abuse).

For the foregoing reasons, the judgment of the circuit court of Marion County is affirmed.

Affirmed.

HARRISON and HOWERTON, JJ., concur.