THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLIFFORD E. CARNEY, Defendant-Appellant.

Fourth District   No. 4—91—0611

Opinion filed May 20, 1992.

James L. Ayers, of Monticello, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Leslie Hairston, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Clifford E. Carney was convicted of aggravated criminal sexual abuse (count I) (Ill. Rev. Stat. 1987, ch. 38, par. 12—16) and sentenced to 48 months of probation, with the first six months to be served in periodic imprisonment and the first year to be spent under intensive conditions. Defendant appeals, asserting three issues: (1) his guilt was not proved beyond a reasonable doubt; and the court erred in entering judgment on the conviction when (2) he was actually exempt from criminal liability for conducting a reasonable medical examination of his stepdaughter, and (3) he lacked the specific intent to gain sexual gratification or arousal as required by statute. We affirm.

In September 1988, defendant Clifford Carney was indicted on two counts of aggravated criminal sexual abuse (counts I and II) (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(b)), and in February 1990, on one count of criminal sexual assault (count III) (Ill. Rev. Stat. 1989, ch. 38, par. 12—13(a)(3)). Following a jury trial in January 1991, in McLean County, defendant was found guilty on counts I and II; however, the jury was unable to reach a verdict on count III. Accordingly, the trial court ordered a mistrial as to that count. Defendant filed a posttrial motion for a new trial. The trial court granted the motion and ordered a new trial on all three counts, which was held in June 1991.

Defendant was found guilty on count I, not guilty on count III, and the jury was unable to reach a verdict on count II. Counsel agreed that the court should declare a mistrial as to count II. Defendant was sentenced and this appeal followed.

Count I alleged that defendant committed the offense of aggravated criminal sexual abuse in that he fondled the breasts of his then 14-year-old stepdaughter, A.C. Count II alleged defendant committed the offense of aggravated criminal sexual abuse in that he fondled the vagina of A.C. Count III alleged defendant committed the offense of criminal sexual assault in that he committed an act of sexual penetration involving his mouth and the vagina of A.C.

A.C. testified the incidents alleged in count I and count II occurred some time in early 1988, between her birthday on February 12 and early March when she was hospitalized. She stated these incidents occurred on a weeknight and her mother was not present in their trailer because she was at an Alcoholics Anonymous (AA) meeting. A.C. complained to defendant that she had a rash on the upper part of her chest but not near her breasts and defendant told her he would look at it for her. They went into the bathroom of the trailer. A.C. testified she was wearing a floor-length black nightgown with "spaghetti" straps and defendant was wearing only a towel wrap. A.C. testified she lowered her nightgown only to the top of her chest area, which would have allowed defendant to see the area of the rash. According to A.C., defendant told her "No, let it fall to your waist, you know, let it go." She then stated she let her nightgown drop to her waist and defendant told her to let it go completely, whereupon it fell to the floor. She had only panties on underneath her nightgown. Defendant then took some ointment from the cabinet and rubbed it on her breasts and nipples. A.C. testified the rash was neither on her breasts nor her nipples. She stated she did not do anything to stop defendant because she was scared.

A.C. testified she then went into the living room and covered up with a blanket which was on the couch. Defendant allegedly followed her into the living room and sat beside her on the couch. A.C. testified defendant put his hand down her nightgown and touched her breasts again. She testified he then pulled up her nightgown, moved her underwear to the side and touched her vagina. A.C. testified she did not stop defendant because she was scared. Eventually, defendant stopped touching her and told her she needed to go to bed. She testified that as she was walking toward her bedroom, defendant told her, "Wait a minute, don't tell your mother. She wouldn't understand."

A.C. further testified defendant stated, "Look what you make me do," unsnapped his towel and exposed his erect penis.

A.C. testified she told a neighbor on her paper route what defendant had done to her. The neighbor then contacted the police and the Department of Children and Family Services (DCFS). A.C. went with her mother to DCFS headquarters and told them what had happened. The following day, she sat in her parents' bedroom with her mother and defendant and told them both what she believed he had done to her. A.C. testified she also told the police about these three incidents.

On cross-examination, A.C. testified she had had this rash for at least one month before defendant put the ointment on it. Prior to that time, neither defendant nor her mother had put anything on the rash. In late March, A.C.'s mother did take her to the doctor to get treatment for this rash. A.C. testified she had been admitted to Mercy Hospital in March 1988 for psychiatric help. She also testified she had periodically been admitted into other hospitals for psychiatric treatment.

A.C.'s mother testified she was married to defendant for 15 years but they had divorced in January 1990. She testified there were problems between A.C. and defendant in that they always competed for her attention. A.C.'s mother testified A.C. was afraid of defendant because he was so big and that defendant spanked her excessively. A.C.'s mother verified that she and defendant had sat in their bedroom with A.C., and A.C. told them what she had told DCFS. She further testified defendant stated he had put the lotion on A.C.'s chest because of the rash and that he had told A.C. not to tell her mother that he had done so.

Detective Mike Jordan of the Bloomington police department testified a DCFS worker contacted him about this case in July 1988. He testified he approached A.C. while she was on her paper route and asked her to talk about the possibility that she had been sexually abused. A few days later, Detective Jordan took A.C.'s statement at the police station, which involved the incidents alleged in counts I and II.

Defendant testified on his own behalf. He admitted he put lotion on A.C.'s chest but denied all of the other allegations. Defendant agreed that the night he put lotion on A.C. was a weeknight and A.C.'s mother had gone to an AA meeting. He testified A.C. complained about the rash and when she pulled down her shirt a little bit, he could see some small red spots. Defendant testified he told A.C. to go into the bathroom because he had some ointment that would help. He testified he reached into the cabinet and when he turned around,

A.C. had taken off her shirt. He testified she took the lotion, placed a small amount on her fingers and began to dab at the spots on her chest. Defendant testified he told A.C. that would not work, so he took some lotion in his hands and rubbed it all over her chest, including her breasts. Defendant denied touching her breasts for sexual gratification.

Defendant denied that at that time he told A.C. not to tell her mother about this incident but admitted he did say that to her a few days later. Defendant admitted inflicting corporal punishment on A.C. but denied that it was excessive or that he treated her differently than her siblings. Defendant testified the first he knew about these allegations was when his wife telephoned him at work and said he needed to come home, whereupon A.C. related the allegations she had told DCFS.

On cross-examination, defendant stated he was wearing blue jeans and no shirt the day he put the lotion on A.C. He testified she had on her school clothes. He admitted he applied the lotion again two days later. He explained he told A.C. not to tell her mother about the lotion incident because her mother was already mad at him and he believed she would not understand why he did this.

■ Defendant first argues he was not proved guilty beyond a reasonable doubt because the evidence was neither clear and convincing nor substantially corroborated. In *People v. Schott* (1991), 145 Ill. 2d 188, 582 N.E.2d 690, the Illinois Supreme Court specifically rejected the standard suggested by defendant. The court stated:

> "In place of this standard, we find that the reasonable doubt test articulated in *People v. Collins* (1985), 106 Ill. 2d 237[, 478 N.E.2d 267], should govern an appellant's claim of evidentiary insufficiency in sex-offense cases. ***
>
> *** The test to be employed on review ' "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis omitted.) (*Schott*, 145 Ill. 2d at 202-03, 582 N.E.2d at 697, quoting *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.)

The evidence presented was sufficient to find defendant guilty beyond a reasonable doubt. As both the State's Attorney and defense counsel argued, this case essentially hinged on the believability of A.C. and defendant. The jury is charged with the responsibility of weighing the credibility of witnesses and resolving any conflicts and inconsistencies

in their testimonies. (*People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276, *cert. denied* (1990), 498 U.S. 881, 112 L. Ed. 2d 174, 111 S. Ct. 215.) Defendant admitted touching A.C.'s breasts, so the only issue before the jury was whether he did so for the purpose of sexual gratification or arousal of himself or A.C. (See Ill. Rev. Stat. 1989, ch. 38, par. 12—16(b).) Defendant testified he did not touch her for this purpose while A.C. testified defendant exposed his erect penis to her. A jury could reasonably believe defendant touched A.C. for the purpose of arousal of himself given her testimony and the fact that he told her not to tell her mother of the incident. Accordingly, we find, after reviewing the evidence in the light most favorable to the State, that a rational trier of fact could have found defendant guilty beyond a reasonable doubt.

■ Defendant next argues he is exempt from criminal liability for aggravated criminal sexual abuse because he was conducting a reasonable medical examination of A.C. Section 12—18(b) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 12—18(b)) provides that any medical examination or procedure conducted by a parent for purposes and in a manner consistent with reasonable medical standards does not constitute the offense of aggravated criminal sexual abuse. Defendant contends his application of lotion to A.C.'s chest was a medical examination done in a manner consistent with reasonable medical standards. Accordingly, he believes he should not have been convicted of this offense.

In *People v. Foster* (1990), 195 Ill. App. 3d 926, 552 N.E.2d 1112, the court concluded section 12—18(b) of the Code was neither an element of the offense of aggravated criminal sexual assault or aggravated criminal sexual abuse nor an affirmative defense to those offenses. The court noted this section was not an element of those offenses because the statutes defining those offenses do not include a requirement that the State prove a defendant's action was not a reasonable medical examination. Likewise, the court stated this section was not an affirmative defense to either of these sex offenses because it was not specifically set forth as an affirmative defense to a sex offense in section 12—17 of the Code. (Ill. Rev. Stat. 1989, ch. 38, par. 12—17.) Whenever the legislature intends a provision to constitute an affirmative defense to a crime, it has labeled it as such. (*People v. Smith* (1978), 71 Ill. 2d 95, 106, 374 N.E.2d 472, 476.) Thus, the court concluded that since section 12—18(b) was neither an element of the offense nor an affirmative defense to those offenses, it is an exception or exemption from the sexual offenses. *Foster*, 195 Ill. App. 3d at 953, 552 N.E.2d at 1131.

Defendant contends the trial court erred in failing to instruct the jury that he may have been exempt from criminal liability because of this exception or exemption. We note that defendant failed to raise this issue at trial and, therefore, has waived it on appeal. (*People v. Lang* (1986), 113 Ill. 2d 407, 469, 498 N.E.2d 1105, 1133.) Generally, failure to object at trial to an error in jury instructions waives the issue for appeal. (*People v. Thurman* (1984), 104 Ill. 2d 326, 472 N.E.2d 414.) Defendant has waived any argument on this issue because he failed to object to these jury instructions at trial, tender alternate instructions and raise the issue in a post-trial motion. (*People v. Smith* (1991), 209 Ill. App. 3d 1043, 1055, 568 N.E.2d 482, 489.) The purpose of requiring a defendant not only to object to a particular instruction, but also to tender proper instructions, is to afford the trial court the opportunity to correct any errors in the instructions before they are actually given. (*People v. Burns* (1986), 144 Ill. App. 3d 345, 355, 494 N.E.2d 872, 880.) In the case of an exception, however, it is defendant's burden to prove by a preponderance of the evidence that he is entitled to the exception. (*People v. Delk* (1981), 96 Ill. App. 3d 891, 902, 421 N.E.2d 1341, 1350; *Smith,* 71 Ill. 2d at 109, 374 N.E.2d at 478.) Defendant neither objected to the instructions given at trial nor tendered alternate instructions to support his position. Moreover, defendant failed to raise the issue of his entitlement to an exemption to the jury. Accordingly, this issue has been waived on appeal.

▪ Finally, defendant argues his conviction cannot be sustained because he lacked the specific intent to gain sexual gratification or arousal as required by sections 12—16(b) and 12—12(e) of the Code (Ill. Rev. Stat. 1989, ch. 38, pars. 12—16(b), 12—12(e)). The State suggests "defendant's sexual inadequacies or response time for arousal does not negate his intent." Section 12—12(e) of the Code defines sexual conduct as any intentional or knowing touching or fondling by the victim or the accused of the sex organ, anus or breast of the victim or the accused, for the purpose of sexual gratification or arousal of the victim or the accused. Defendant suggests the evidence supports his contention because he told Detective Jordan he only applied the lotion to A.C.'s breast for medicinal purposes and also because he allegedly did not become aroused until sometime after he applied the lotion. He contends that had he intended to gain sexual gratification or arousal by applying the lotion, he would have become aroused much sooner and A.C. would have noticed his erection.

Section 12—12(e) requires the State to prove defendant touched the victim for the purpose of sexual gratification or arousal. As the State notes, the statute does not require a defendant to actually

achieve sexual gratification or arousal in order to satisfy the definition of sexual conduct. Defendant offered the jury an explanation as to why he touched A.C.'s breasts, which apparently the jury did not believe, as evidenced by the conviction on count I. A.C. testified she had no rash on her breasts and she further testified defendant had an erection, which he exposed to her. The jury had sufficient evidence to conclude defendant touched the breasts of A.C. for the purpose of sexual gratification or arousal.

Accordingly, for the foregoing reasons, defendant's conviction for aggravated criminal sexual abuse is affirmed.

Affirmed.

GREEN, P.J., and COOK, J., concur.