THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES PAUL GLASS, Defendant-Appellant.

Fourth District   No. 4—91—0908

Opinion filed December 28, 1992.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

After a jury trial, defendant James Glass was convicted of three counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)) and one count of aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(c)(1)). Defendant was sentenced to three consecutive terms of 25 years of imprisonment for the aggravated criminal sexual assault charges and a concurrent term of seven years of imprisonment for aggravated criminal sexual abuse. Defendant appeals his convictions and sentences. We affirm.

On January 30, 1991, defendant was charged with three counts of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse of his 10-year-old next-door neighbor, E.C. On August 13, 1991, the court held a hearing pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 115—10) to determine the reliability of statements made by the victim, E.C., to Bloomington police officer Mike Jordan. Jor-

dan testified that on January 24, 1991, he met with E.C. at the Bloomington police department along with Lisa Piper from the Department of Children and Family Services (DCFS). Jordan said E.C., who was 10 years old at that time, told him that defendant had performed sexual acts with her. E.C. described in detail a few of the incidents and said they mostly occurred in defendant's car or van out in the country except for one occasion which took place in defendant's bedroom in Bloomington. Jordan compiled a typed statement of E.C.'s remarks and had E.C. read the statement over for clarity and to make corrections. The court admitted the statement into evidence as People's exhibit No. 1.

At trial, Jordan testified to his conversations with E.C. on January 24 and January 31 during which he compiled the typed statements of her comments. E.C. told Jordan the first incident happened during the summer of 1990 when she accompanied defendant to the Furrows store. After defendant finished purchasing hardware at Furrows, he drove out into the country and put his hand down E.C.'s shirt and felt her breasts. He then put his hand down her pants and felt her vagina. The second incident E.C. described to Jordan was when she and her best friend, M.C., went into the country with defendant in his van. Defendant gave each of them money for hugs and kisses. The third incident E.C. described to Jordan occurred the day before Christmas eve in 1990 when defendant asked E.C. to come over to his house next door and see his waterbed. When E.C. complied and sat on his bed, defendant removed her pants, pulled up her shirt and began licking her breasts and vagina. E.C. stated that defendant then had her stimulate his penis and testicles. E.C. described to Jordan in detail how defendant had her perform oral sex on him to the point of ejaculation.

Jordan attested to the fact that E.C.'s signature was on the statement and that she had read it over and circled the misspelled words. Jordan said he proceeded to defendant's residence on January 30, 1991, and arrested him shortly thereafter. Jordan could not swear all of the alleged incidents of sexual abuse happened within the borders of McLean County since E.C. could not pinpoint the locations except for the incident in defendant's bedroom. Jordan stated he believed the incident after the trip to Furrows occurred in McLean County because E.C. stated that when they got back close to town and traffic started to get heavy, defendant would stop fondling her.

E.C. testified she was born March 26, 1980, and moved next door to defendant in Bloomington on March 11, 1990. Defendant began spending a lot of time with E.C.'s family soon after they moved in.

E.C. would often go places with defendant by herself and he would buy her toys and clothes. E.C. said that defendant touched her "in the wrong places," including her "potty," which she indicated was the area between her legs. E.C. said she did not remember where it happened. She then said she did not remember anything about the first time it happened and did not recall telling Jordan about these incidents in the typed statement. After E.C. was allowed to read her statement to refresh her memory, she said she still did not remember it. E.C. admitted she was scared to tell what happened and did not want to talk about it. She then recalled one time when defendant took her to the State fair. She said defendant had a smile on his face and she "knew he wanted to do sex with me" because he smiled and winked. She said defendant kissed her, did things to her "potty" and her "boobs." She said this occurred in defendant's van during the summer of 1990 in a parking lot across from the State fair.

E.C. also described the incident where defendant asked her to see his waterbed. She said when she went inside his bedroom, defendant shut the door and pulled down her pants and underwear. Defendant took his pants off and proceeded to touch, kiss, and lick E.C.'s vagina and breasts. E.C. described how defendant rubbed his penis on her vagina but said defendant did not put his fingers into her vagina on this occasion. E.C. said she did not remember if she touched him and does not think she had anything in her mouth. She did not remember him doing anything else with his penis. She has tried to forget these things and does not like thinking about it. E.C. said she signed the statement given to Jordan and that it was the truth. She understood what it meant to tell the truth. E.C. said after the incident on the waterbed she went to Havana, Illinois, with defendant to look at houses but defendant did not fondle her on that trip. E.C. also testified defendant drove her and her friend M.C. out in the country and offered them money for hugs and kisses. Defendant gave them both "French and regular kisses" and told them not to tell anyone.

M.C. testified she is 12 years old. She and E.C. would often go places with defendant and he would take them out to eat or buy them clothes. On one occasion he took them to a lake outside of town. Defendant told them he would give each of them $5 for five hugs and kisses. M.C. said while defendant was kissing her he put his hand inside her shirt, rubbed her back, and raised her shirt. Over defense objection, M.C. stated that E.C. told her that on one occasion that defendant "took her (E.C.) into his house and actually did sex to her."

A.C. and R.C., E.C.'s parents, testified that defendant saw E.C. at least once a week and would often take her places alone. R.C. re-

called E.C. acting upset on one or two occasions after going someplace with defendant.

Defendant testified he is 46 years old and works as a general contractor. He lived in Bloomington next door to E.C. and would often go places with various members of her family. Defendant took E.C. to fairs or events around central Illinois but denied ever doing "anything of a sexual nature" with her. Defendant said that on one occasion he took M.C. and E.C. to Clinton Lake in De Witt County. While he was driving, the girls started talking about training bras. Then he said M.C. exposed her breasts which he could not see from the driver's seat. Defendant became upset when the girls began talking about condoms and masturbation and told them to "shut up." When they got to the lake, defendant said E.C. was upset because she had never heard defendant yell. Defendant said he put his arms around them and said he was sorry and kissed them both on the cheek. Defendant did not offer them money but the girls took some change off the dashboard after defendant bought gas. On other occasions defendant took E.C. camping, shopping, or to a movie but he denied ever touching her sexually. Defendant stated that on Saturday, December 22, 1990, he took E.C. with him to Havana, Illinois, to submit a job estimate on a house. Defendant said he frequently goes to Furrows in Bloomington and may have taken E.C. with him but he does not specifically remember taking her there. Defendant stated he considers himself a homosexual and admitted he pleaded guilty in November 1990 to sexual abuse of a young boy.

Pursuant to the prosecution's motion, the court nol-prossed count III. The jury found defendant guilty on all remaining counts. Defendant filed a post-trial motion which the trial court denied. At the sentencing hearing, the State presented L.M., who testified that she had known defendant since 1967 when he was her next-door neighbor. In 1969 when L.M. was nine, defendant fondled her vagina with his finger. He also attempted to perform oral sex on her but she was able to get free and run home. Defendant attempted to molest her on another occasion but stopped when L.M. screamed. Defendant testified he did not remember ever meeting L.M. much less fondling her.

Defendant alleges the trial court committed reversible error by failing to conduct a hearing pursuant to section 115—10 of the Code in regard to M.C.'s statement that E.C. said defendant "took her into his house and actually did sex to her." Section 115—10 of the Code provides:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

***

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement." (Ill. Rev. Stat. 1989, ch. 38, pars. 115—10(a)(2), (a)(b).)

The legislature enacted section 115—10 to expand the previous hearsay exception, to allow into evidence out-of-court statements of children who are victims of sexual abuse. (85th Ill. Gen. Assem., Senate Proceedings, June 26, 1987, at 227; *People v. Rushing* (1989), 192 Ill. App. 3d 444, 451, 548 N.E.2d 788, 792.) A statement admitted pursuant to section 115—10 must show a " 'particularized guarantee[ ] of trustworthiness.' " *People v. Coleman* (1990), 205 Ill. App. 3d 567, 581, 563 N.E.2d 1010, 1019, quoting *Idaho v. Wright* (1990), 497 U.S. 805, 816, 111 L. Ed. 2d 638, 653, 110 S. Ct. 3139, 3147.

■ We find defendant has waived the issue of the trial court's failure to conduct a section 115—10 hearing before M.C. testified. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130; *People v. Booker* (1992), 224 Ill. App. 3d 542, 552, 585 N.E.2d 1274, 1281.) In order to preserve an argument for appeal, both an objection at trial and a written post-trial motion raising the issue are required. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130; *Booker*, 224 Ill. App. 3d at 552, 585 N.E.2d at 1281.) Although defendant objected to M.C.'s testimony at trial, he did not raise the issue in his post-trial motion. When a defendant has not properly preserved his claim of error, appellate review is limited to the determination of whether the statement was so prejudicial as to amount to plain error under Illinois Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). Since we do not consider M.C.'s statement to have affected substantial rights of

defendant or to have denied him a fair trial, we find defendant has waived this issue on appeal.

On the merits we find the trial court erred in failing to conduct a section 115—10 hearing before M.C. testified, but that such error was harmless. When error is shown to exist, a reviewing court must reverse unless it is clearly shown that the error was not prejudicial to defendant. (*People v. Lawler* (1991), 142 Ill. 2d 548, 562, 568 N.E.2d 895, 901.) Although the presence of the declarant in court, or even the fact that the declarant testifies, does not prevent hearsay from being hearsay (*Lawler*, 142 Ill. 2d at 557, 568 N.E.2d at 899; *cf.* 2 J. Strong, McCormick on Evidence §326 (4th ed. 1992)), the admission of hearsay is harmless if such statement is fully corroborated by the declarant's testimony at trial and the defense has the opportunity to cross-examine the declarant. (*People v. Morton* (1989), 188 Ill. App. 3d 95, 102, 543 N.E.2d 1366, 1370-71.) E.C.'s statement to M.C. that defendant "actually did sex to her" was admitted after E.C. had testified that defendant digitally and orally penetrated her vagina. M.C.'s testimony was only cumulative of testimony already given. Considering E.C.'s direct testimony, we conclude the error was harmless.

Defendant's next contention is that the State failed to prove beyond a reasonable doubt that the criminal activity alleged in counts IV and V occurred within McLean County. The State argues defendant waived this issue under section 1—6(a) of the Criminal Code of 1961 (Criminal Code), which states that "[a]ll objections of improper place of trial are waived by a defendant unless made before trial." (Ill. Rev. Stat. 1989, ch. 38, par. 1—6(a).) Defendant would have waived this issue if he were alleging a defective indictment rather than a failure of proof. It is true that an objection to improper place of trial is waived unless defendant objects before trial. However, the fact that the State has failed to prove the location of the offense need not and cannot be objected to before trial. (*People v. McClain* (1978), 60 Ill. App. 3d 320, 322-23, 376 N.E.2d 774, 776.) In his appellate brief, defendant appears to allege, not a defect in the indictment, but rather a failure of proof as to venue and thus has not waived this issue.

Nonetheless, we find the evidence in the record is sufficient to prove counts IV and V occurred within McLean County. Venue is proper in any county where any element of the offense was committed. (*People v. Lambert* (1990), 195 Ill. App. 3d 314, 318, 552 N.E.2d 300, 303.) Venue is a material allegation which must be proved beyond a reasonable doubt along with the other elements of an offense. (*People v. Hagan* (1991), 145 Ill. 2d 287, 300, 583 N.E.2d 494, 500.) Venue

may be established by direct or circumstantial evidence. (*People v. Ramsey* (1986), 147 Ill. App. 3d 1084, 1088, 496 N.E.2d 1054, 1057; *Hagan*, 145 Ill. 2d at 300, 583 N.E.2d at 500.) "The location of the offense is proved by circumstantial evidence where the only rational conclusion to be drawn from the evidence as a whole is that the offense took place in the county alleged." (*Ramsey*, 147 Ill. App. 3d at 1089, 496 N.E.2d at 1057-58; see also *People v. Toellen* (1978), 66 Ill. App. 3d 967, 971, 384 N.E.2d 480, 483.) A jury's determination as to circumstantial evidence should not be disturbed unless there are circumstances contradicting the reasonable inferences and conclusions drawn by the jury from such evidence. *People v. Stone* (1977), 46 Ill. App. 3d 729, 731, 361 N.E.2d 330, 332.

Count IV states that defendant committed an act of aggravated criminal sexual abuse involving the hands of defendant and the vagina of E.C.; count V states that defendant committed an act of aggravated criminal sexual assault involving the vagina of E.C. and the finger of defendant. These incidents were alleged to have occurred during the summer of 1990 when E.C. accompanied defendant on a trip to Furrows and a country drive afterward. E.C. testified at trial that defendant touched her "[r]ight between my legs" in the summer of 1990 but she could not remember any other details. Jordan testified at trial that the country area surrounding Furrows is in McLean County but he could not swear the incidents E.C. testified to happened within the borders of McLean County. However, in People's exhibit No. 1, E.C. stated the following about the Furrows incident:

"He put his finger inside and made it go up and down or from side to side. He did that until we got to town and started seeing traffic. He made me straighten out my clothes so they wouldn't be crooked. *** When we got home he gave me two or three dollars and I went inside my house."

Defendant argues that E.C.'s comment about "coming into town" does not necessarily mean Bloomington. However, given the fact that Bloomington is E.C.'s hometown, this is the only logical conclusion to be drawn in the context of her statement. E.C. did not mention driving to any other cities that day with defendant and the jury could logically conclude her statement about "coming into town" meant Bloomington.

Apart from this evidence, we find section 1—6(f) of the Criminal Code is applicable to the instant case:

"If an offense is committed upon any railroad car, vehicle, watercraft or aircraft passing within this State, and it cannot readily be determined in which county the offense was commit-

ted, the offender may be tried in any county through which such railroad car, vehicle, watercraft or aircraft has passed." (Ill. Rev. Stat. 1991, ch. 38, par. 1—6(f).)

The offenses charged in counts IV and V of this case took place in defendant's van while the van was traveling within the State. Applying section 1—6(f) of the Criminal Code, venue would still be proper in McLean County even if defendant drove out of McLean County temporarily since defendant's vehicle had to have passed through McLean County to return E.C. to her home in Bloomington. See also *Ramsey*, 147 Ill. App. 3d at 1089, 496 N.E.2d at 1058; *People v. Frank* (1981), 98 Ill. App. 3d 388, 395, 424 N.E.2d 799, 804; *People v. Barksdale* (1974), 24 Ill. App. 3d 489, 497, 321 N.E.2d 489, 495.

■■ Defendant next contends he was denied a fair trial where the trial court failed by its own motion to instruct the jury that venue must be proved beyond a reasonable doubt. (See Illinois Pattern Jury Instructions, Criminal, No. 2.07 (3d ed. 1992).) The burden of preparing criminal jury instructions is primarily on the parties, not the trial court. The trial court has no obligation to give instructions not requested by counsel and no party may raise on appeal the failure to give any instruction unless he tendered it to the court. (*People v. Fetter* (1992), 227 Ill. App. 3d 1003, 1007, 591 N.E.2d 474, 476.) Failure to object at trial to an error in jury instructions generally waives the issue for appeal (*People v. Carney* (1992), 229 Ill. App. 3d 690, 696, 593 N.E.2d 1035, 1039; *People v. Waisvisz* (1991), 221 Ill. App. 3d 667, 676, 582 N.E.2d 1383, 1389-90) as does the failure to raise the issue in a written post-trial motion. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.) However, under a limited exception for plain error in Supreme Court Rule 451(c), substantial defects in instructions are not waived by failure to make a timely objection thereto if the interests of justice require. (134 Ill. 2d R. 451(c).) This plain error exception applies only to correct serious or grave errors, cases that are factually close, or cases in which the error threatens the fundamental fairness of the defendant's trial. (*People v. Hood* (1991), 210 Ill. App. 3d 743, 749, 569 N.E.2d 228, 232; see also *People v. Shields* (1991), 143 Ill. 2d 435, 446, 575 N.E.2d 538, 543.) Here, we determined that section 1—6(f) of the Criminal Code established venue in McLean County. In addition, defendant did not offer any venue instructions or object to a lack of venue instruction at the trial. Because defendant failed to tender an instruction on venue at trial and failed to raise the issue in his post-trial motion, and since the plain error exception does not apply, we find defendant has waived the issue.

On the merits we find the trial court's failure to *sua sponte* give the venue instruction was not reversible error. The jury must be instructed that the State is required to prove beyond a reasonable doubt that each element of the charged offense occurred in the county in which the crime was alleged to have been committed *if* the evidence raises a question of the propriety of venue. (*People v. Chaney* (1987), 157 Ill. App. 3d 552, 563, 510 N.E.2d 997, 1004.) Such an instruction must be given only if the evidence raises a factual question as to whether venue had been proved beyond a reasonable doubt. (*McClain*, 60 Ill. App. 3d at 323, 376 N.E.2d at 777.) In *McClain*, the court refused to tender defendant's instruction on venue. The reviewing court concluded that such instruction should have been given but that the error was harmless because the evidence at trial established venue beyond a reasonable doubt. (*McClain*, 60 Ill. App. 3d at 323, 376 N.E.2d at 777.) Here section 1—6(f) removed the issue of venue from the case. Even if venue were an issue, the jury was informed of the issue during defense counsel's closing argument, which included the following:

> "But even if it did happen, ladies and gentlemen, you still can't find him guilty of these particular counts, these last two counts, because the incident didn't happen in McLean County. *** It's a matter of venue. *** So even if you think something happened between James Glass and [E.C.], unless you are convinced beyond a reasonable doubt that it happened in McLean County, and certainly none of the evidence that I heard substantiates that, you cannot and should not find James Glass guilty of these offenses on these two counts."

Generally, in determining the effect of faulty jury instructions on the validity of a defendant's conviction, the instructions should not be judged by themselves but must be considered in light of the record as a whole, including the evidence and arguments presented to the jury. (*Shields*, 143 Ill. 2d at 445-46, 575 N.E.2d at 543.) Given the application of section 1—6(f) of the Criminal Code and the information stated to the jury by defense counsel in his closing argument, we find the court's failure to *sua sponte* instruct on this issue was harmless error.

Defendant's next contention is that he was not proved guilty beyond a reasonable doubt because E.C.'s testimony was inconsistent, improbable, and contrary to the testimony of other defense witnesses. The reasonable doubt test articulated in *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, governs an appellant's claim of evidentiary insufficiency in sex offense cases. Criminal convictions are not to be overturned on review unless the evidence is so improbable or un-

satisfactory that it creates a reasonable doubt of the defendant's guilt. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 276.) The test to be employed on review " 'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

■ Defendant argues that E.C.'s testimony at trial about the incident in his bedroom directly contradicts the allegations in count I and her statement in People's exhibit No. 1 that defendant had her perform fellatio on him to the point of ejaculation. At trial, E.C. said she could not remember defendant doing anything with his penis besides rubbing her vagina and she did not think she had anything in her mouth. As in many sex offense cases, the outcome of this case rested upon the credibility of the victim and the defendant. The jury had the opportunity to view the proceedings and was charged with the responsibility of weighing the credibility of witnesses and resolving any conflicts and inconsistencies in their testimonies. (*Carney*, 229 Ill. App. 3d at 694-95, 593 N.E.2d at 1038; *People v. McCarthy* (1991), 213 Ill. App. 3d 873, 880, 572 N.E.2d 1219, 1224; *People v. Lemons* (1991), 210 Ill. App. 3d 33, 41, 568 N.E.2d 1380, 1385.) A fact finder's determinations on witness credibility and its resolution of disputed questions of fact are entitled to deference on review. (*People v. Jones* (1988), 174 Ill. App. 3d 737, 745, 528 N.E.2d 1363, 1369.) Any shortcomings in a victim's testimony do not destroy credibility but merely affect the weight given to the testimony by the trier of fact. (*Booker*, 224 Ill. App. 3d at 550, 585 N.E.2d at 1280.) At trial, E.C. admitted she was scared and had tried to forget the incidents. E.C. also indicated she understood she had to tell the truth and that the statement she gave to Jordan was true. The jury was fully aware of the deficiencies in E.C.'s testimony, but it chose to believe her version over the story given by defendant and we do not find that choice to be improbable or unsatisfactory.

In addition, the evidence as a whole sufficiently described defendant's conduct during the commission of the offenses. The failure of a victim to testify at trial to specific details regarding a defendant's sexual acts upon her is not conclusive since section 115—10 of the Code does not require every detail recited in a previous statement be corroborated by the child's testimony at trial. (Ill. Rev. Stat. 1989, ch. 38, par. 115—10; *Rushing*, 192 Ill. App. 3d at 451, 548 N.E.2d at 792; *Morton*, 188 Ill. App. 3d at 102, 543 N.E.2d at 1371.) We find E.C.'s

statement and testimony at trial to be sufficiently reliable and any discrepancies in her statements did not detract from the reasonableness of her story as a whole.

■ Defendant argues that E.C.'s testimony as to his "touching" did not meet the statutory definition of "penetration." Section 12–12(f) of the Criminal Code defines penetration in pertinent part as follows:

> "(f) 'Sexual penetration' means any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration." (Ill. Rev. Stat. 1991, ch. 38, par. 12–12(f).)

In People's exhibit No. 1, E.C. described the incident which occurred after she and defendant had gone to Furrows and were driving in the country: "He [defendant] got his hand inside my underwear and started rubbing my private parts. Some people call it [a] potty. He put his finger *inside* and made it go up and down or from side to side." (Emphasis added.) E.C. also described in detail how defendant had her perform fellatio on him and how he performed cunnilingus on her. The issue whether sexual penetration occurred is a question of fact for the jury (*People v. Harris* (1989), 187 Ill. App. 3d 832, 838, 543 N.E.2d 859, 862), and it was appropriate for the jury to conclude that penetration did occur in this case.

■ We also reject defendant's contention that the absence of medical testimony or evidence to corroborate the victim's claim of sexual assault raises a reasonable doubt as to his guilt. A sex offense victim's testimony, as with any other crime victim, need not be substantially corroborated for a defendant to be found guilty beyond a reasonable doubt. *People v. Schott* (1991), 145 Ill. 2d 188, 206, 582 N.E.2d 690, 698.

Defendant next alleges that the court should overrule its holding in *People v. Ewald* (1991), 210 Ill. App. 3d 7, 568 N.E.2d 451, in light of *People v. Bole* (1991), 223 Ill. App. 3d 247, 585 N.E.2d 135, and modify defendant's sentence so two of his three terms run concurrently. Defendant alleges the court below imposed three consecutive 25-year terms on three counts because it mistakenly believed that consecutive terms were mandatory. The applicable statutory provision, section 5–8–4(a) of the Unified Code of Corrections (Unified Code), provides in pertinent part:

"(a) \*\*\* The court shall not impose consecutive sentences for offenses which were committed *as part of a single course of conduct* during which there was no substantial change in the nature of the criminal objective, *unless*, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the *defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961*, in which event the court shall enter sentences to run consecutively." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a).)

Count I and count II were alleged to have occurred on December 23, 1990, and count V was alleged to have occurred between May and September of 1990. Defendant contends the December 23 actions are not within the scope of section 5—8—4(a) of the Unified Code since that section only authorizes mandatory consecutive sentences where the sexual assaults were part of a single course of conduct.

*Ewald*, a fourth district case, held that section 5—8—4(a) of the Unified Code mandates consecutive sentences where multiple offenses include violations of sections 12—13 or 12—14 of the Criminal Code (Ill. Rev. Stat. 1989, ch. 38, pars. 12—13, 12—14), even if the offenses arose from distinctly separate courses of conduct. (*Ewald*, 210 Ill. App. 3d at 9, 568 N.E.2d at 452.) *Ewald* was followed by the fifth district in *People v. Hough* (1991), 221 Ill. App. 3d 447, 453-55, 582 N.E.2d 259, 263-64, and *People v. Haun* (1991), 221 Ill. App. 3d 164, 176-77, 581 N.E.2d 864, 873, as well as in other fourth district cases (*People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 574 N.E.2d 1345; *People v. McDade* (1991), 219 Ill. App. 3d 317, 579 N.E.2d 1173). In *Ewald*, we acknowledged that the language in section 5—8—4(a) is unclear, but stated that "[A]ny other interpretation would be difficult to reconcile since it is unlikely the legislature intended to authorize a mandatory consecutive sentence in cases where a section 12—13 or section 12—14 violation stems from a single course of conduct, and not, as in the instant case, when a defendant sexually assaults two young girls on separate occasions." *Ewald*, 210 Ill. App. 3d at 10, 568 N.E.2d at 453.

*Bole*, a second district case, held that, by its plain meaning, the mandatory consecutive sentencing provision in section 5—8—4(a) of the Unified Code was intended to apply only to situations where the relevant offenses occurred during a single course of conduct. (*Bole*, 223 Ill. App. 3d at 254, 585 N.E.2d at 141.) *Bole* was followed by one second district and one third district case, *Fetter* (227 Ill. App. 3d at 1008, 591 N.E.2d at 477), and *People v. Dooley* (1992), 227 Ill. App.

3d 1063, 1066, 592 N.E.2d 1112, 1114. The court in *Bole* found it significant that the legislature placed the provision regarding section 12—13 or 12—14 offenses with the already existing exception to the single course of conduct ban against consecutive sentences. The court reasoned that if the legislature intended consecutive sentences to apply to sections 12—13 and 12—14 offenses irrespective of a single course of conduct, the legislature could have set the provision out separately. *Bole*, 223 Ill. App. 3d at 258, 585 N.E.2d at 144.

■ Where the language of a statute is ambiguous and admits of alternate constructions, a reviewing court should select the construction which leads to a logical result and reject those which would lead to an absurdity, inconvenience, or injustice. (*Hough*, 221 Ill. App. 3d at 454-55, 582 N.E.2d at 264; *People v. Jones* (1985), 134 Ill. App. 3d 1048, 1051, 481 N.E.2d 726, 728.) Under the *Bole* interpretation, a serial sex abuser convicted of molesting the same child on different days or many children on different occasions would not be exposed to mandatory consecutive terms whereas an offender who violated a child more than once on the same day would be exposed to consecutive terms. This interpretation is illogical and would lead to absurdity and injustice in sentencing decisions. A serial sex abuser who commits several offenses on the same occasion is no more culpable than one who commits several offenses on different occasions. We elect to follow *Ewald* and its progeny and conclude defendant was properly sentenced to three consecutive sentences in conformity with section 5—8—4(a) of the Unified Code. We further note the supreme court recently rejected an attempt to narrow the scope of section 5—8—4(a). *People v. Wittenmyer* (1992), 151 Ill. 2d 175, 601 N.E.2d 735.

We further reject defendant's contention that his sentences were an abuse of discretion. A trial court's sentencing decision is entitled to great deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) It is not our function to serve as a sentencing court and we will not disturb a sentence on review absent an abuse of discretion by the trial court. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541, 547.) Defendant contends the trial court did not properly consider all the mitigating factors in evidence or give adequate consideration to his rehabilitative potential. Defendant correctly states that the Illinois Constitution demands "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) However, the trial court is not required to give greater weight to the possibility of rehabilitation than to the seriousness of the offense. (*People v. Partin* (1987), 156 Ill. App. 3d 365,

373, 509 N.E.2d 662, 666-67.) In imposing the sentence, a court has no obligation to recite and give value to each fact presented at the sentencing hearing. (*Partin*, 156 Ill. App. 3d at 373, 509 N.E.2d at 667.) There is a strong presumption that the court's sentencing decision is based upon proper legal reasoning and that the court has considered any evidence in mitigation before it. *Partin*, 156 Ill. App. 3d at 373, 509 N.E.2d at 667.

■ The trial court carefully considered the defendant's presentence report in its sentencing decision, particularly noting defendant's prior criminal record, which included convictions for auto theft, contributing to the delinquency of a child, thefts, motor vehicle offenses, and a 1989 aggravated criminal sexual assault. The record indicates that defendant's aggravated criminal sexual assault of E.C. in December 1990 occurred while defendant was out on bond awaiting sentencing in the 1989 aggravated criminal sexual assault case. In addition, the testimony of L.M. presented at the sentencing hearing indicates defendant had sexually molested young victims approximately 20 years ago. The presentence report also contained statements from E.C.'s parents regarding the psychological damage inflicted on E.C. and her family. We find the trial court properly considered all the relevant factors necessary in sentencing defendant. In light of defendant's prior offenses, the trial court could reasonably conclude consecutive 25-year sentences were necessary as a deterrent and as a protective measure for society.

For the foregoing reasons, we affirm defendant's convictions and sentences for aggravated criminal sexual assault and aggravated criminal sexual abuse.

Affirmed.

STEIGMANN, P.J., and LUND, J., concur.